**Latchmie TOOLASPRASHAD,**
**Petitioner,**

v.

**Jeff GRONDOLSKY, Respondent.**

**Civil Action No. 07–5157 (JBS).**

United States District Court,
D. New Jersey.

July 23, 2008.

Latchmie Toolasprashad, Fort Dix, NJ, Petitioner Pro Se.

## *OPINION*

SIMANDLE, District Judge:

### *TABLE OF CONTENTS*

I. Petitioner's Previous Legal Actions ...........................................613

II. Petitioner's Pending Legal Actions ........................................622
 A. Bivens–VII.............................................623
 B. 2241–III; the Instant Petition ........................623
 C. Supplement to the Instant Petition ....................627
 D. Joint Reading of the Petition and Supplement .........627
 E. Post–Supplement Submissions In This Action.............628

III. Discussion........................................................629
 A. The Nature of Habeas Action and Pleading Requirements ..................629
 B. Claims Not Cognizable Under § 2241 ...................631
 1. Expungement Claims ...............................632
 a. Complete Expungement of the BOP Report ......................632
 b. Partial Expungement ......................................633
 2. Curative/Future Parole Hearing Claims ...........................635
 a. Parole Hearing Conducted by a Single Examiner ...................637
 b. Presence of Audience and Life Testimony.........................639
 c. Examiner's Bias ........................................642
 C. Habeas–like Claims ....................................646
 1. Mickens–Thomas .................................647
 2. Gambino v. Morris...............................648
 3. Wasman, Pearce, Bono and Marshall Cases .........................649
 4. Solomon, Misasi, Dye, Billiteri and Persico Cases ......................650

IV. Conclusion ........................................................654

Latchmie Toolasprashad ("Petitioner") is presently confined at F.C.I. Fort Dix, New Jersey, serving a life term for contract murder. This matter is before this Court upon Petitioner's filing of his petition for a writ of *habeas corpus,* pursuant to 28 U.S.C. § 2241 ("Petition"). *See* Docket Entry No. 1. After filing his Petition, Petitioner then filed a document titled "amended petition" ("Supplement"), which, it appears, was intended by Petitioner to operate as a supplement to, rather than a substitute of, the original Petition. *See* Docket Entries No. 2, 4. Petitioner raises various civil rights claims and habeas-like allegations. As explained below, the present case will be referred to as "*2241–III,*" as it is but one of a long series of related, often duplicative, filings by Mr. Toolasprashad.[1]

---

[1] For ease of reference, the Court has classified those of Mr. Toolasprashad's legal actions, which are expressly discussed in this Opinion, into the four groups: (a) § 2241 actions; (b) § 2255 petitions; (c) *Bivens* actions; and (d) mandamus actions. Specifically, these groups contain the following:

(a) § 2241 actions:
1. *2241–I, Toolasprashad v. Beeler,* Civ. Action No. 98–4983 (D.N.J.);
2. *2241–II, Toolasprashad v. De Rosa,* Civ. Action No. 02–2841 (D.N.J.);
3. *2241–III,* the instant matter.

(b) § 2255 petitions:
1. *2255–I,* discussed in *Toolasprashad v. United States,* 902 F.2d 30 (4th Cir.1990);
2. *2255–II,* discussed in *United States v. Toolasprashad,* 1993 WL 17082, 1993 U.S.App. LEXIS 1557 (4th Cir. Jan. 28, 1993);
3. *2255–III,* discussed in *United States v. Toolasprashad,* 1994 WL 83779, 1994 U.S.App. LEXIS 4486 (4th Cir. Mar. 14, 1994).

(c) *Bivens* actions:
1. *Bivens–I, Toolasprashad v. Henry,* Civ. Action No. 98–1234 (M.D.Pa.);
2. *Bivens–II,* discussed in *Toolasprashad v. Fed. Bureau of Prisons,* 2007 WL 3122269, 281 Fed.Appx. 69, 2007 U.S.App. LEXIS 25263 (3d Cir. Oct. 26, 2007);
3. *Bivens–III, Toolasprashad v. Cowan,* Civ. Action No. 01–675 (M.D.Pa.);
4. *Bivens–IV, Toolasprashad v. Wright,* Civ. Action No. 02–5473 (D.N.J.);

## I. PETITIONER'S PREVIOUS LEGAL ACTIONS

Since the Petition and Supplement directly relate to many of Petitioner's past and ongoing litigations, this Court finds it helpful to begin this Opinion with a summary of some of these actions. Petitioner's earliest actions concentrated on Petitioner's challenges to his convictions.[2] *See United States v. Toolasprashad ("2255–III")*, 1994 WL 83779, 1994 U.S.App. LEXIS 4486 (4th Cir. Mar. 14, 1994); *United States v. Toolasprashad ("2255–II")*, 1993 WL 17082, 1993 U.S.App. LEXIS 1557 (4th Cir. Jan. 28, 1993); *Toolas-*

5. *Bivens–V, Toolasprashad v. Bureau of Prisons*, Civ. Action No. 04–652 (D.D.C.);
6. *Bivens–VI, Toolasprashad v. Bureau of Prisons*, Civil Action No. 06–1187, 2007 WL 842930 (D.D.C.).;
7. *Bivens–VII, Toolasprashad v. Williams*, Civ. Action No. 07–5860 (D.N.J.).

(d) Mandamus actions:
1. *Mandamus–I*, discussed in *Toolasprashad v. Bureau of Prisons*, 2002 WL 31741515, 2002 U.S.App. LEXIS 25145 (D.C.Cir. Dec. 6, 2002);
2. *Mandamus–II*, discussed in *In re Toolasprashad*, 2003 WL 22799685, 2003 U.S.App. LEXIS 23589 (D.C.Cir. Nov. 18, 2003).

2. The incident underlying Petitioner's conviction took place on December 15, 1985, when Beverly Ann Dozler, a member of the United States Army stationed in Ft. Bragg, North Carolina, was killed at the entrance of her quarters by a blast from a sawed-off shotgun fired by James David Hamilton, a person hired by Petitioner to execute such killing. *See United States v. Toolasprashad*, 1993 WL 17082, 1993 U.S.App. LEXIS 1557 (4th Cir. Jan. 28, 1993). "Petitioner arranged for the murder of [Ms. Dozler] when she spurned his dating advances and marriage proposals[;] Petitioner hired ... Hamilton to commit the murder in exchange for $20,000 and a new car." *Toolasprashad v. De Rosa*, 02–2841(JHR) (D.N.J.), Docket Entry No. 21, at 2. Initially, Petitioner was declared incompetent to stand trial in light of his bizarre behavior after the victim's murder in which he claimed not to accept the fact of her death, even though his arrest took place when he

*prashad v. United States*, *("2255–I")*, 902 F.2d 30, 1990 WL 52506 (4th Cir.1990).

His next set of actions arose from his allegations that, upon his conviction, he began serving his life sentence "at the federal correctional facility in Allenwood, Pennsylvania [where] he and a female staff member had a sexual relationship." *Toolasprashad v. Beeler*, App. No. 99–5512, Docket Entry No. 19 (opinion), at 2 and n. 1, 2000 WL 1508538 (3d Cir.2000).[3]

Apparently, as a disciplinary measure, [Petitioner] was transferred ... to the federal correctional facility in Marianna, Florida.... [W]hile at FCI–Marianna,

was about to pay Hamilton for the murder. *See Toolasprashad*, 1993 WL 17082, 1993 U.S.App. LEXIS 1557. Consequently, Petitioner was committed to a medical facility for treatment. When he became competent (changing, *inter alia*, his position as to the fact of the victim's death) and his trial was set, Petitioner was encouraged by his counsel to plead guilty to the first degree murder charge and, upon taking such plea, Petitioner was sentenced to life imprisonment. Subsequently, Petitioner filed a *pro se* petition, pursuant to 28 U.S.C. § 2255, which was dismissed by the United States District Court for the Eastern District of North Carolina. Petitioner appealed that ruling to the United States Court of Appeals for the Fourth Circuit, alleging that he received ineffective assistance of counsel and that his plea was involuntary. The Fourth Circuit affirmed the dismissal of his § 2255 petition, holding that there was no reversible error in the district court's judgment (and finding that the ineffective assistance of counsel claim was already rejected on the merits in a decision addressing Petitioner's previous petition, *Toolasprashad v. U.S.*, 902 F.2d 30, 1990 WL 52506 (4th Cir.1990)). *See id.*

3. The Court of Appeals' unpublished opinion detailed the bases for its decision to affirm the District Court's ruling in *Toolasprashad v. Beeler*. The fact of the Court of Appeals' affirmance was noted in the Federal Reporter in *Toolasprashad v. Beeler*, 234 F.3d 1266, 2000 WL 1508538 (3d Cir.2000) (affirmance without a published opinion).

[Petitioner] was written up in an incident report and charged with [two minor offenses]. Following a disciplinary hearing, [he] was found guilty ... and sanction [to minor a sanction, which] was suspended in its entirety pending 180 days of clear conduct. The sanction did not include loss of good time credit. [After being transferred to FCI Fort Dix, petitioner] filed [a] § 2241 [application (hereinafter "*2241–I* ") alleging that the] Incident Report ... was invalid because the staff [at FCI–Marianna] was racially biased [and] the Disciplinary Hearing Officer reneged on his promise to recommend that the Parole Commission not credit the Incident Report in calculating [his] parole eligibility date. [He] also alleged that [the aforesaid] actions ... were taken in retaliation for his having filed numerous grievances.[4]

*Id.* at 2–3.

Judge Irenas, presiding over Petitioner's *2241–I* action, dismissed the petition, finding that: (a) Petitioner's due process rights were not violated during the administrative hearings, which fully comported to the requirements set forth in *Wolff v. McDonnell,* 418 U.S. 539, 563–71, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); (b) Petitioner's liberty rights were not implicated by the transfer from FCI–Allenwood to FCI–Marianna; (c) no facts suggesting retaliatory motives were offered by Petitioner; and (d) the Parole Commission was allowed to rely on Petitioner's incident reports to determine his parole eligibility. *See Toolasprashad v. Beeler* ("*2241–I* "), Civ. Action No. 98–4983(JEI) (D.N.J.), Docket Entry No. 15. The Court of Appeals for the Third Circuit affirmed Judge Irenas' decision, with clarification that—while Petitioner's § 2241 application indeed failed to allege a constitutional violation—"habeas relief [was] not available on [Petitioner's] claim[s] ... because he did not lose good time credit." *Toolasprashad v. Beeler,* 234 F.3d 1266, 2000 WL 1508538 (3d Cir.2000), App. No. 99–5512, Docket Entry No. 19, at 4. The Court of Appeals explained that "[a] suspended sentence to disciplinary confinement [is a decision of the type that does] not impact on a prisoner's release date and thus [does] not involve a significant liberty interest," amenable to § 2241 review.[5] *Id.*

Then, in 1999, Petitioner filed a civil action in the United States District Court for the District of Columbia, pursuant to the Privacy Act, against the United States Bureau of Prisons ("BOP"), alleging that his transfer to another facility and reclassification as a special offender adversely affected him in several ways. Upon the district court's decision granting the BOP's motion to dismiss Petitioner's complaint for insufficiency of pleadings, Petitioner appealed. The United States Court of Appeals for the District of Columbia Circuit reversed and remanded, finding that the district court erred in dismissing the com-

**4.** Simultaneously, Petitioner filed a civil action with the District of Maryland (from which the matter was transferred to the Middle District of Pennsylvania), challenging his transfer and disciplinary charges related to his sexual relationship with a female corrections officer, alleging that these actions were also taken in retaliation for his having filed numerous grievances. *Toolasprashad v. Beeler,* C.A. No. 99–5512, Docket Entry No. 19 (opinion), at 2 at 3 (citing *Toolasprashad v.*

*Henry,* Civ. Action No. 98–1234 (M.D.Pa.) ("*Bivens–I* ")).

**5.** The Court of Appeals noted that the sole *habeas* claim, related to extension of Petitioner's parole eligibility date, was unexhausted and raised against the wrong entity, the Bureau of Prisons. *See Toolasprashad v. Beeler,* App. No. 99–5512, Docket Entry No. 19, at 5–6, 2000 WL 1508538 (3d Cir.2000) (affirming Judge Irenas' decision in *2241–I* ).

plaint, but solely because Petitioner's allegations (that the BOP failed to maintain accurate records regarding Petitioner's history of harassing and demeaning staff members and, in addition, included a certain memorandum containing false information in Petitioner's prison file, all in order to obtain basis for his transfer) met the liberal pleading requirements of Rule 8, thus preventing dismissal of the complaint as insufficiently pled. *See Toolasprashad v. Bureau of Prisons*, 286 F.3d 576 (D.C.Cir.2002) (an intermediary decision in Petitioner's *Bivens–II* line of cases).

It appears that Petitioner was moved to a correctional facility in Pennsylvania during the time when the District of Columbia was considering the above-discussed remand, and the case was transferred to the United States District Court for the Middle District of Pennsylvania. Judge Muir, presiding over that matter, addressed the "false information" claim (*i.e.*, the sole claim that remained unresolved by the District of Columbia) and resolved the matter in favor of the BOP.[6] Petitioner appealed Judge Muir's decision to the United States Court of Appeals for the Third Circuit, which affirmed Judge Muir's conclusion. *See Toolasprashad v. Fed. Bureau of Prisons* ("*Bivens–II*"), 2007 WL 3122269, 2007 U.S.App. LEXIS 25263 (3d Cir. Oct. 26, 2007). Specifically, the Court of Appeals agreed with Judge Muir's finding that Petitioner failed to show any material statement in the memorandum so inaccurate as to warrant monetary relief. *See id.* at *2 and n. 1, 2007 U.S.App. LEXIS 25263 at *4–6 and n. 1 (combing through Petitioner's prison file supporting the statements in the BOP's memorandum stating that Petitioner disrupted the orderly running of a federal prison through his blatant disrespect for authority and harassment of correctional staff members).

It also appears that, around the same time when he began his challenge with respect to the BOP's memorandum in the District of Columbia, Petitioner filed another action in that court, that is, an application for a writ of mandamus alleging that the BOP violated his rights by offering him only a copy of the current Parole Commission Manual and failing to provide him with a copy of 1985–87 Parole Commission Manuals. *See Toolasprashad v. Bureau of Prisons* ("*Mandamus–I*"), 2002 WL 31741515, 2002 U.S.App. LEXIS 25145 (D.C.Cir. Dec. 6, 2002). Upon the district court's denial of the writ, Petitioner appealed to the District of Columbia Circuit, which affirmed the district court's finding.[7] *See id.*

---

**6.** Specifically, Judge Muir focused on Petitioner's contention that the BOP violated § 552a when it transferred him to another correctional institution and classified him as a "special offender" on the basis of allegedly false information contained in a certain BOP memorandum. This memorandum discussed Petitioner's disrespect for authority and his documented history of harassing and demeaning correctional staff members, and stated that he had disrupted the orderly running of a federal prison. *See Toolasprashad v. Fed. Bureau of Prisons* (final decision in the *Bivens–II* line of cases), 2007 WL 3122269, 281 Fed. Appx. 69, 2007 U.S.App. LEXIS 25263 (3d Cir. Oct. 26, 2007).

**7.** Apparently, during the same time period, Petitioner filed another application for mandamus trying to block his transfer to another correctional facility (located, presumably, in Pennsylvania). The Court of Appeals for the District of Columbia Circuit affirmed the underlying district court's decision to deny the writ. *See In re Toolasprashad* ("*Mandamus–II*"), 2003 WL 22799685, 2003 U.S.App. LEXIS 23589 (D.C.Cir. Nov. 18, 2003). It further appears that, right after the transfer, Petitioner filed another civil action, pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), admitting to his sexual relationship at FCI–Allenwood but alleging that he was forced to perform involuntary

On June 10, 2002, Petitioner filed another petition for a writ of *habeas corpus* in this District, pursuant to 28 U.S.C. § 2241. *See Toolasprashad v. De Rosa* ("*2241–II*"), Civ. Action No. 02–2841(JHR), Docket Entry No. 1. Presiding over Petitioner's *2241–II* matter, Judge Rodriguez summarized the facts underlying that litigation, as well as Petitioner's challenges, as follows:[8]

> Petitioner was eligible for parole [consideration on] December 16, 1995 ... On June 7, 1995, Petitioner received [his] initial parole hearing wherein he denied committing the crime; rather, he alleged that both he and his co-conspirator had been dating the victim, and that he was targeted because of his race.[9] The Parole Commission then rated the severity of Petitioner's offense as Category Eight ... and found his guideline range to be 100 plus months. The Commission set Petitioner's reconsideration hearing for June 2010. Petitioner appealed [this] fifteen-year mandate, and the commission's decision was affirmed. [That decision] was again affirmed on administrative appeal following [the] interim hearing held on November 3, 1998. The [BOP] was then ordered to conduct a psychological evaluation of Petitioner before his next interim hearing. ... Petitioner was evaluated as having Narcissistic Personality Disorder, a disorder in which individuals are generally unpredictable and have difficulty maintaining employment and relationships.[10] Petitioner's next interim hearing was held on August 22, 2001. After reviewing Petitioner's institutional achievements, the hearing examiner recommended that Petitioner's reconsideration date be advanced two years from June 2010 to June 2008. Upon review,

sexual acts with the female prison guard. *See Toolasprashad v. Cowan* ("*Bivens–III*"), Civ. Action No. 01–675 (M.D.Pa.) Upon recommendations of Magistrate Judge Smyser, Judge Muir dismissed Petitioner's action as time-barred, and that decision was affirmed by the Third Circuit. *See Toolasprashad v. Cowan*, 52 Fed.Appx. 189 (3d Cir.2002).

8. Petitioner's *2241–II* application came before Judge Rodriguez together with a host of Petitioner's motions, namely, a "motion for reconsideration of the denial of application for *pro bono* counsel, motion to retain a copy of [Petitioner's] presentence report, motion requesting [an] order to obtain and retain a copy of his presentence investigation report, motion requesting an order to obtain a U.S. Parole Commission manual [of 1985, 1986 and 1987], motion to grant the writ of *habeas corpus* and motion for a decision and/or appointment of a 'special master.'" *Toolasprashad v. De Rosa*, Civ. Action No. 02–2841, Docket Entry No. 21, at 1.

9. Judge Rodriguez clarified that: (a) "Petitioner is a Guyana national of Hindu–Indian descent"; and (b) Hamilton, Petitioner's "[c]o-conspirator was also sentenced to life imprisonment." *Toolasprashad v. De Rosa*, Civ. Action No. 02–2841, Docket Entry No. 21, at 2, 4, nn. 2, 4.

10. *See Knock v. Sullivan*, 1992 WL 4226, at *5, n. 7, 1992 U.S.App. LEXIS 360, at *14, n. 7 (7th Cir. Jan. 10, 1992) ("Narcissistic personality disorder has as its essential feature a grandiose sense of self-importance or uniqueness; preoccupation with fantasies of unlimited success, etc. By definition some impairment in interpersonal relations always exists. Occupational functioning may be impaired, or may be interfered with by depressed mood, interpersonal difficulties, or pursuit of unrealistic goals") (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 315–316 (3d Ed.1986)); *see also United States v. Cohen*, 510 F.3d 1114, 1125 (9th Cir.2007) ("a narcissistic personality disorder ... can cause a person to continue to believe something to be true despite overwhelming evidence of its patent absurdity"); *Brown v. Ornoski*, 503 F.3d 1006, 1012 (9th Cir.2007) ("narcissistic people often have a rich fantasy life and [a man suffering from such disorder may] imagine that he could somehow make things right with [the subject of his affection], make her fall in love with him, and even marry him").

two reviewing examiners disagreed ... and ordered that the June 2010 hearing date remained unchanged.... Petitioner subsequently filed an administrative appeal.... The Board affirmed the decision [concluding that]:(1) the Commission's decision did not exceed the guideline range ....; (2) the initial decision was based on the record which established that petitioner denied his guilt [and] was without remorse; (3) information from the [BOP's] psychological report contradict[ed] Petitioner's claim that he [was] a good parole risk ...; (4) despite Petitioner's good behavior in the prison setting, his "indications of posturing and violent personality [were] sufficient to deny parole"; and (5) even if Petitioner did not pose a risk, parole [was properly] denied on the basis of just punishment for a heinous crime.[11] Petitioner objected to the Board's denial of parole in his [§ 2241] petition [in the *2241–II* action. In addition to raising § 2255 challenges to his conviction,] Petitioner claim[ed] that the Commission's decision did not sufficiently credit his institutional accomplishments, relied on outdated psychological evaluations and discriminated against him as a Hindu–Indian. Petitioner requested that [Judge Rodriguez] review transcripts of [Petitioner's] parole hearings, ... review Petitioner's case *de novo*, and release Petitioner on parole.

*Toolasprashad v. De Rosa* ("*2241–II*"), Civ. Action No. 02–2841, Docket Entry No. 21, at 2–4, 16.

Assessing Petitioner's *2241–II* application, Judge Rodriguez: (a) dismissed Petitioner's § 2255 claims for lack of jurisdiction; (b) partially granted Petitioner's requests to release his presentence re-

ports to him; and (c) denied Petitioner's requests as to Parole Commission manuals on the grounds that "the Commission [did] not have the desired volumes on file and [these volumes] are likewise inapplicable to Petitioner's parole hearing." *Id.* at 6–11, 14. Then, turning to Petitioner's challenges to the Commission's decision to deny him both immediate parole and acceleration of his parole review date, Judge Rodriguez explained to Petitioner that "[t]he role of the court, in reviewing a within-guidelines parole decision, is ... essentially limited to insuring that the guidelines were in fact followed, once the Commission has exercised its informed discretion." *Id.* at 15 (quoting *Marshall v. Lansing*, 839 F.2d 933, 950 (3d Cir. 1988)). Since Petitioner's offense was both properly categorized by the Commission, and the guidelines set no upper limit for offenses like the one committed by Petitioner, Judge Rodriguez found no error as to the framework within which the Commission exercised its discretion. *See id.* at 15–16. Similarly, Judge Rodriguez found no violations with respect to the Commission's discretionary considerations and held that: (a) Petitioner was not entitled to parole on the basis of his institutional accomplishments, since the accomplishments, while duly considered by the Commission, provide a merely permissible rather than mandatory basis for parole; and (b) Petitioner's contention that the Commission ignored the conclusions of Dr. Schwartz (a psychiatrist who prepared a report stating that Petitioner had "no mental illness, no personality disorder and no physical disorder") because Petitioner was not paroled were without merit, since the record established the Commission's legitimate exercise of discretion

11. Apparently, Petitioner demanded immediate parole in addition to his request to have his rehearing sooner than June 2010.

in light of both Dr. Schwartz' report and the BOP's psychological report evaluating Petitioner with narcissistic personality disorder. *See id.* at 12–13, 16–17.

Consequently, Judge Rodriguez dismissed Petitioner's § 2241 petition and later denied his motion for reconsideration. *See id.,* Docket Entry No. 23. Petitioner appealed these decisions to the Court of Appeals for the Third Circuit, which affirmed Judge Rodriguez' findings. *See Toolasprashad v. Derosa,* 122 Fed.Appx. 598 (3d Cir.2005). Subsequently, when Petitioner sought certiorari from the Supreme Court of the United States, the Supreme Court denied Petitioner's application. *See Toolasprashad v. DeRosa,* 545 U.S. 1122, 125 S.Ct. 2924, 162 L.Ed.2d 308 (2005).

Five months after filing his aforesaid *2241–II* petition examined by Judge Rodriguez, Petitioner filed with this Court another *Bivens* action asserting that he was denied access to the prison commissary bathroom and water fountain during his work shifts, that no chairs were made available for him while he was working, and that prison employees obstructed his administrative remedies, retaliated against him, and conspired to violate his constitutional rights. *See Toolasprashad v. Wright ("Bivens–IV "),* Civ. Action No. 02–5473, 2005 WL 3536205, 2005 U.S. Dist. LEXIS 36408 (D.N.J. Dec. 22, 2005). Petitioner's claims were dismissed by the undersigned upon consideration of the defendants' motion for summary judgment, and that decision was affirmed by the Third Circuit.[12] *See Toolasprashad v. Wright,* 232 Fed.Appx. 208 (3d Cir.2007).

On April 23, 2004, while his *Bivens–IV* action was still pending with this Court, Petitioner filed another *Bivens* action with the District of Columbia. *See Toolasprashad v. Bureau of Prisons ("Bivens–V "),* Civ. Action No. 04–652 (D.D.C.). On July 2, 2004, that *Bivens–V* matter was transferred to this District and assigned to the undersigned. *See Toolasprashad v. Bureau of Prisons,* Civil Action No. 04–3219(JBS) (D.N.J.).

The factual statements made in Petitioner's *Bivens–V* complaint were, effectively, an extensive elaboration on the facts and contentions previously presented to Judge Rodriguez in *2241–II, supra.* This Court summarized Petitioner's elaborations as follows:

On November 2, 1998, [Petitioner] appeared for a parole hearing [and was denied parole. After the hearing,] the ... Commission ... requested that the [BOP] provide[d] a current psychological report [evaluating Petitioner.] Psychology intern Defendant Dr. Jaime Berry prepared the BOP psychological report [for Petitioner], under the supervision of psychologist Defendant Dr. Kindra Pugh. [Petitioner now] contends that the assessment was conducted improperly and that the resulting BOP psychological report [did] not accurately report [Petitioner's] behavior or psychological condition.... In addition, [Petitioner] contends that the diagnosis of ... Narcissistic Personality Disorder ... and other conclusions and recommendations contained in the report [were] incorrect.... After receiving the BOP psychological report, [Petitioner's] counsel

---

**12.** Initially, the action was dismissed for failure to exhaust administrative remedies. However, upon Petitioner's motion for reconsideration, certain claims presented in that action were deemed duly exhausted. *See Toolasprashad v. Wright,* 2006 WL 2264885, at

*3, 2006 U.S. Dist. LEXIS 54913, at *8 (D.N.J., Aug. 8, 2006). These exhausted claims were considered and dismissed in this Court's ruling addressing the defendant's motion for summary judgment. *See id.*

arranged for a second report by ... Dr. Daniel Schwartz.... Dr. Schwartz submitted his report, appeared at [Petitioner's parole] hearing, ... testified in favor of granting [Petitioner] parole [and] disputed Dr. Berry's diagnosis of Narcissistic Personality Disorder. [Petitioner, however,] was again denied parole and that denial was upheld on appeal to the ... Board.... [Petitioner] contends that, [while] the BOP psychological report ... could be construed as generally favorable, it is internally inconsistent and the Commission seized on certain of those inconsistencies to deny him parole. [Petitioner also] contends that the Commission did not consider Dr. Schwartz's report. Following this second denial of parole, [Petitioner] filed an Administrative Remedy with the BOP requesting that the BOP psychological report be amended to correct its various flaws. His requests were denied.... [Petitioner now] requests injunctive relief, in the form of (1) [expungement] of the [BOP's] psychological report prepared by Dr. Berry and Dr. Pugh [and] (2) a new parole hearing giving "equal weight" to the testimony and report of Dr. Schwartz.

*Toolasprashad v. Bureau of Prisons ("Bivens–V")*, 2006 WL 2627931, 2006 U.S. Dist. LEXIS 65175 (D.N.J. Sept. 13, 2006) (summarizing the findings made in an earlier opinion issued in that action, Civil Action No. 04–3219, Docket Entry No. 10 ("April Opinion")).

Addressing Petitioner's allegations, the undersigned noted that it was indeed "appropriate for [Petitioner] to bring these claims in a civil action for declaratory and injunctive relief, as opposed to a habeas action," April Opinion at 6, n. 5 (citing *Wilkinson v. Dotson*, 544 U.S. 74, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005)), and "construe[d] the Complaint as asserting claims that [Petitioner] was denied due

process in the preparation of the BOP psychological report and in his parole hearing and claims under the Privacy Act ... for correction of records of the BOP and the Commission." *Id.* at 6.

The Court, however, dismissed both the due process and Privacy Act claims. With respect to Petitioner's due process claim, this Court explained in *Bivens–V:*

> There is no constitutional right to parole or to an error-free parole decision-making process. [See] *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).... In *Greenholtz*, "[the Supreme Court held that a parole statute might be so drafted as to] entitle [a prisoner] to some measure of constitutional protection," [but] the Court nevertheless rejected the suggestion that parole hearings should be full-scale adversary hearings. [*Id.*] at 12, 14, 99 S.Ct. 2100. Instead, the Court found sufficient the ... procedures that afford the prisoner an opportunity to be heard and, when parole is denied, that notify the prisoner in what respects he fell short of qualifying for parole. [*Id.*] at 16, 99 S.Ct. 2100. In addition, ... the Court of Appeals for the Eighth Circuit held that, in the absence of exceptional circumstances, a prisoner at a parole hearing has no constitutional right to call witnesses in his behalf or to confront and cross-examine adverse witnesses. [See *Inmates of Nebraska Penal & Correctional Complex v. Greenholtz*,] 576 F.2d 1274, 1284 (8th Cir. 1978), *rev'd in part on other grounds*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668.... Assuming that the Federal Parole Act creates the same "expectation" of parole [as discussed] in *Greenholtz*, [Petitioner] has failed to state a claim that he was denied due process in the creation of the BOP psychological report

or in the procedures employed by the Parole Commission. According to the allegations of the Complaint, [Petitioner] participated in the testing used to create the BOP psychological report, he was given a copy of the BOP psychological report in advance of the parole hearing, he was permitted to present both the live testimony and the report of his own psychological expert, he was permitted to appear and be heard at the parole hearing, he was given a statement of the reasons why he was denied parole, and he was permitted to appeal that decision. Thus, the Commission's procedures met the *Greenholtz* due process requirements.... *Cf. Furnari v. U.S. Parole Commission*, 125 Fed.Appx. 435, 437 (3d Cir.2005) (Commission has broad discretion in materials it can consider in making parole decision, and reliance on materials describing conduct other than the offense of conviction to set offense severity level does not implicate due process rights). In addition, to the extent the Complaint could be construed as asserting a claim that [Petitioner] has a due process right to have false information expunged from his parole file, *cf. Paine v. Baker*, 595 F.2d 197 (4th Cir.), *cert. denied*, 444 U.S. 925, 100 S.Ct. 263, 62 L.Ed.2d 181 (1979), the Court of Appeals for the Third Circuit has never recognized such a cause of action, *see Williams v. Federal Bureau of Prisons*, 85 Fed.Appx. 299, 304 (3d Cir.2004), and it is not clear that the *Paine* case remains good law even in the Fourth Circuit, *see Johnson v. Rodriguez*, 110 F.3d 299, 309 n. 13 (5th Cir.), *cert. denied*, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997). In any event, [Petitioner] fails to state a claim even under the rule announced in *Paine*. Under *Paine*, a prisoner must allege three elements in order to state a due process claim for expungement: (1) that particular infor-

mation exists in his file, (2) that the information in his file is false, and (3) that the information is relied on to a constitutionally significant degree. [*See*] 595 F.2d at 201. With respect to the second element, the *Paine* court stated,

> [I]t is not sufficient that the inmate disputes evaluations and opinions regarding him. [*See*] *Williams v. Ward*, 556 F.2d 1143 (2d Cir.), *cert. dismissed*, 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977) (inmate disagreed with psychiatric evaluations contained in file).... The federal courts will not oversee the discretionary decisions of prison administrators and second-guess their evaluations. [*See id.*] at 201.

As [Petitioner] presents the type of claim explicitly excluded by the *Paine* court, a challenge to a psychological evaluation, he does not state a due process claim for expungement of records contained in his BOP or parole file.

April Opinion at 7–11 (footnotes and original brackets omitted).

Turning to Petitioner's Privacy Act claim, this Court, in *Bivens–V*, analogously explained to Petitioner that while, under 5 U.S.C. § 552a(g)(2)(A), "the court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct, ... [t]he BOP has exempted the Inmate Central Record System and the Inmate Physical and Mental Health Record System from ... § 552a, [*see*] 28 C.F.R. § 16.97(a), (j), (n), [and] the Commission has exempted its records from the Privacy Act's amendment requirements ... and its provision permitting injunctive relief against the agency § 552a(g)." April Opinion at 12 (citing also 28 C.F.R. § 16.85 and *Deters v. U.S. Parole Commission*, 85 F.3d 655, 658 n. 2 (D.C.Cir.1996)). Conse-

quently, this Court dismissed Petitioner's *Bivens–V* action and, on September 13, 2006, denied his request to reopen that matter.

On June 29, 2006, while Petitioner's motion to reopen the *Bivens–V* matter was pending with this Court, Petitioner filed another *Bivens* complaint with the District of Columbia. *See Toolasprashad v. Bureau of Prisons* (*"Bivens–VI "*), Civil Action No. 06–1187(ESH) (D.D.C.).[13] Addressing Petitioner's *Bivens–VI* claims, Judge Huvelle stated as follows:

> [Petitioner] filed an amended complaint ... against the [BOP], the ... Commission and five individuals (Kathleen Pinner, [Dr.] Kerr, Marcia Baruch, Jamie Berry and Kindra Pugh). [Petitioner] challenges the use of an alleged inaccurate psychological report during parole proceedings, as well as the circumstances surrounding the preparation of the report. Under the doctrine of *res judicata*, "the parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which they already have had an opportunity to litigate—even if they chose not to exploit that opportunity— whether the initial judgment was erroneous or not." *Hardison v. Alexander*, 655 F.2d 1281 (D.C.Cir.1981). The doctrine of *res judicata* requires an identity of parties or their privies in the earlier and later suits. A final judgment in one action "bars any further claim based on the same 'nucleus of facts,' for 'it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory

upon which a litigant relies.' " *Page v. United States*, 729 F.2d 818, 820 (D.C.Cir.1984)(quoting *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir. 1977)); *accord Velikonja v. Ashcroft*, 355 F.Supp.2d 197, 200–01 (D.D.C.2005). [Petitioner's] amended complaint involves the same parties and nucleus of facts that formed the basis of his previous complaint [in *Bivens–III* ]. On April 4, 2005, the District of New Jersey issued an opinion addressing [Petitioner's] constitutional and Privacy Act claims and dismissing the [*Bivens–III* ] case with prejudice [and then denied Petitioner's] motion to reopen [the *Bivens–III*] action. Although Petitioner now] asserts that [his] Privacy Act claim is not barred because the use of the alleged inaccurate record to deny his release to parole is "an ongoing matter," [since the] Commission's most recent denial in June 2006 was against the recommendation of "a retired BOP Chief Forensic Psychologist ... with more than 30 years' experience [which] contradicted the intern's report," ... [t]he Privacy Act is not "a vehicle for amending the judgments of federal officials or ... other[s] ... as those judgments are reflected in records maintained by federal agencies." *Kleiman v. Dep't of Energy*, 294 U.S.App. D.C. 49, 956 F.2d 335, 337–38 (D.C.Cir.1992)(quoting *Rogers v. U.S. Dep't of Labor*, 607 F.Supp. 697, 699 (N.D.Cal.1985)). Thus, a "complaint not about the accuracy of records, but about the underlying decision they reflect" is not cognizable under the Privacy Act. *Levant v. Roche*, 384 F.Supp.2d 262, 270

---

**13.** Although the *Bivens–VI* matter was originated under the Freedom of Information Act (since Petitioner asserted that the BOP failed to release over 500 documents provided by Petitioner to psychology intern Defendant Dr. Jaime Berry), Petitioner amended his complaint in that matter after the District of Co-

lumbia granted the BOP's motion for summary judgment, *see Toolasprashad v. Bureau of Prisons*, 474 F.Supp.2d 14 (D.D.C.2007); in his amended complaint, Petitioner substituted his original claims alleging a violation of the Freedom of Information Act for *Bivens*-like claims.

(D.D.C.2005). [Consequently] the doctrine of *res judicata* bars [Petitioner] from relitigating [his due process and Privacy Act] claims. . . .

*Toolasprashad v. Bureau of Prisons ("Bivens–VI")*, 2007 WL 842930, at *1–2, 2007 U.S. Dist. LEXIS 18949, at *1–6 (D.D.C. Mar. 19, 2007).

Judge Huvelle, therefore, dismissed Petitioner's *Bivens–VI* action, *see id.* at *2, 2007 U.S. Dist. LEXIS 18949, at *6, noting, *inter alia*, that the fact of Petitioner's naming of Parole Examiner Kathleen Pinner as a defendant in the *Bivens–VI* action did not affect the court's *res judicata* analysis, even though Pinner was not named as a defendant in *Bivens–V*, since Petitioner was "suing her for her actions taken as an employee of the . . . Commission."[14] *See id.* at *1, n. 1, at *3, n. 1 (citing *LoBue v. Christopher*, 82 F.3d 1081, 1085 (D.C.Cir.1996)(relying, in turn, on *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03, 60 S.Ct. 907, 84 L.Ed. 1263 (1940))).

Petitioner appealed Judge Huvelle's decision to the Court of Appeals for the District of Columbia Circuit, which affirmed the district court's findings in *Toolasprashad v. Bureau of Prisons*, 2007 U.S.App. LEXIS 23275 (D.C.Cir., Oct. 1, 2007) (finding that "the motion for summary affirmance [should] be granted [because] the parties' positions are so clear as to warrant summary action").

## II. PETITIONER'S PENDING LEGAL ACTIONS

Petitioner has two actions currently pending in this District. The instant § 2241 Petition (*"2241–III"*) was filed three weeks after the District of Columbia Circuit affirmed the district court's decision by issuing its ruling in *Toolasprashad v. Bureau of Prisons*, 2007 U.S.App. LEXIS 23275 (D.C.Cir., Oct. 1, 2007). On the same day, Petitioner also filed a new civil action complaint (*"Bivens–VII"*), which was assigned to Judge Kugler. *See Toolasprashad v. Williams*, 07–5860(RBK) (D.N.J.), Docket Entry No. 1. Following the mode of his previous applications, Petitioner filed extremely voluminous submissions in both *Bivens–VII* and *2241–III*.[15]

---

**14.** Judge Huvelle also noted that her decision did not address alternative constitutional grounds that Petitioner might have alleged in his *Bivens–V* action. *See Toolasprashad v. Bureau of Prisons*, 2007 WL 842930, at *2, n. 2, 2007 U.S. Dist. LEXIS 18949, at *5, n. 2 (citing *Settles v. U.S. Parole Comm'n*, 368 U.S.App. D.C. 297, 429 F.3d 1098 (D.C.Cir. 2005), the case where a federal inmate challenged the Commission's rule prohibiting the inmate's counsel from being present at his parole hearing, and where the District of Columbia Circuit found that, while the Commission was immune from § 1983 liability for violations of the Administrative Procedure Act, the rule denying legal representation violated the Equal Protection Clause to the extent of warranting a *Wilkinson*-like relief in the form of a curative parole hearing with the attorney present).

**15.** The sheer volume of Petitioner's submissions compounds their confusion and overlap with previously adjudicated cases. Petitioner's *Bivens–VII* submission consisted of 110 pages (application for *in forma pauperis* status excluded). Consequently, Judge Kugler dismissed Petitioner's *Bivens–VII* complaint for failure to comply with requirements of Rule 8 and administratively terminated that matter subject to reopening upon Petitioner's filing of an amended complaint complying with the aforesaid requirements. *See Toolasprashad v. Williams*, 07–5860(RBK) (D.N.J.), Docket Entries Nos. 6, 7. In response, Petitioner filed a 78–page submission. *See id.*, Docket Entry No. 8. Petitioner's instant Petition is a 158–page submission (without the 8–page Supplement). Petitioner's *2241–I* application was 64 pages long. Petitioner's *2241–II* application was 33 pages, with 78 pages of accompanying motions, totaling 111 pages. Petitioner's previous *Bivens* applications were equally voluminous. In addition, Petitioner is using 11–point font and packs 29 lines per page. *See,*

## A. *Bivens–VII*

In his *Bivens–VII* action, Petitioner sued ten named prison officials, plus an unspecified number of "John and Jane Does," who are unnamed prison officials, all of whom are employed at Petitioner's current place of confinement, FCI Fort Dix. *See Toolasprashad v. Williams*, Civ. No. 07–5860(RBK). Initially asserting that his original "[c]omplaint shall paint a clear picture" about the "Gestapo-style tactics" of these defendants, *see id.*, Docket Entry No. 1, at 1, Petitioner then proceeded with a series of confusing narratives. The first narrative, of seven pages, was dedicated to the circumstances of Petitioner's allegedly retaliatory transfer, in spring of 2007, from a certain unit within the FCI Fort Dix to another unit, which Petitioner calls "East Gulag."[16] *See id.* at 2–9. The next three-page narrative discussed alleged withholdings of legal mail during March of 2007. *See id.* at 9–12. The third, fourth and fifth narratives encompassed fifteen pages and described various alleged undue interferences with Petitioner's parole hearing in 2003, 2006 and 2007, *see id.* at 12–26, reflecting on the issues asserted in Petitioner's previous claims including, *inter alia*, those addressed by Judge Rodriguez and this Court in Petitioner's *2241–II* and *Bivens–V* actions. The sixth narrative was seven pages long; it discussed the events of 2001 to 2004, and asserted that Petitioner's numerous parole hearings were sabotaged, implicating the same claims raised in Petitioner's *2241–II* and *Bivens–V* actions. *See id.* at 27–33. The seventh (and last) narrative was also of seven pages, and it discussed alleged obstruction of Petitioner's grievance processes. *See id.* at 33–40.

Petitioner concluded his seven narratives with an explanation that prison officials are "slimy-lying" and "blood-sucking," that "the BOP has maintained its statute as the dumping ground for unemployable and an incubator for breeding corruption and nepotism [with] an on-going culture of systemic lies." *See id.* at 41.

On July 16, 2008, Petitioner submitted an amended complaint in his *Bivens–VII* action; where he "added four defendants and two [more] issues." *See id.*, Docket Entry No. 8, at 1. Re-stating his claims in his amended complaint, Petitioner further elaborated on his previous claims including, *inter alia*, those addressed by Judge Rodriguez and this Court in Petitioner's *2241–II* and *Bivens–V* actions. *See generally, id.*, Docket Entry No. 8.

In his *Bivens–VII* action, Petitioner seeks, *inter alia*, "[t]hat the defendants cease and desist all interferences with [his] parole process." Docket Entry No. 1, at 41; Docket Entry No. 8, at 24.

## B. *2241–III: the Instant Petition*

Petitioner's instant submission, pending before the undersigned, consists of a 48–page petition and 110 pages of exhibits. Same as his *Bivens–VII* complaint, Petitioner's application presents a series of narratives.

The first narrative is titled "Respondents failed to timely prepare a psychological report for the Parole Commission with a May 1, 1999 due date which effectively prejudiced Petitioner from gaining parole." *See* Docket Entry No. 1, at 2. The narrative covers the events that took place between November 2, 1998, and February 22, 1999, and were presented to Judge Rodri-

---

*e.g., Bivens–VII*, Docket Entry No. 1, and *2241–III*, Docket Entry No. 1.

**16.** Petitioner clarifies that F.C.I. Fort Dix consists of "three separate [G]ulags." *See Toolasprashad v. Williams*, 07–5860, Docket Entry No. 1, at 6, n. 5.

guez in *2241–II* and to the undersigned in *Bivens–V, i.e.,* the alleged delay in preparation of the BOP evaluation, *i.e.,* the BOP report, which Petitioner now asserts to be the basis for his unconstitutional denial of parole. *See id.,* at 12–16.

The next narrative bears the heading, "As Petitioner utilized the BOP administrative remedy to decry FCI Ft. Dix psychology department deceptive tactics, he was retaliatory [ (sic) ] transferred to FCI Petersburg, Virginia." *See id.* at 16. This narrative continues to elaborate on the alleged delay in preparation of the BOP evaluation and, in addition, addresses the issues related to Petitioner's transfer from one BOP facility to another, *see id.* at 16–18, *i.e.,* the matter resolved in the *Mandamus–II* action, and affirmed by the United States Court of Appeals for the District of Columbia, as discussed *supra.*

The third narrative is titled "The [BOP] report . . . is false, inaccurate, misleading and without supporting facts." *See id.* at 18. The narrative discusses the issue, which was at the core of this Court's *Bivens–V* and District of Columbia *Bivens–VII* matters, namely, Petitioner's disagreement with the medical opinions contained in the BOP report, which Petitioner reads as lending support to the Parole Board's decision to deny him parole. Petitioner's challenges to the BOP report are selective: he alleges that the BOP report is fully correct as to those conclusions which could be interpreted as supporting his release on parole (e.g., Petitioner expressly stresses the correctness of the BOP report with respect to the finding that "the possibility of [Petitioner] being the perpetrator of any behavior likely to harm another is mini-

mal") [17] but maintains that the BOP report is wholly incorrect as to the conclusions supporting the Board's decision to deny him release on parole. *See id.* at 18–27.

Petitioner's fourth narrative, titled "The [BOP] report was effectively contradicted one year later by a leading professor of forensic psychiatry recognized by the government of more than 30 years," begins with a discussion of how Petitioner's then-counsel retained Dr. Schwartz in 2000 for the purposes of evaluating Petitioner and proceeds with accusations as to alleged obstacles posed by Petitioner's prison officials to that evaluation and to Petitioner's preparation for the following parole proceedings. The former aspect of that discussion, *i.e.,* the retention and credentials of Dr. Schwartz, was presented to this Court in the *Bivens–V* matter and to the District of Columbia in *Bivens–VI* matter, while the latter aspect of alleged obstructions is currently before Judge Kugler, as part of the pending *Bivens–VII* matter. *See id.* at 27–30.

The narrative concludes with Petitioner's assertion that "the Parole Board . . . used the false, inaccurate and misleading [BOP] report to deny [Petitioner] parole and completely ignored [Dr. Schwartz] who personally examined more than 1,000 murderers." *Id.* at 30. These allegations are substantively indistinguishable from those presented in Petitioner's *2241–II, Bivens–V* and *Bivens–VI* actions, and were conclusively rejected by Judge Rodriguez, the undersigned and Judge Huvelle. Petitioner now seeks to have this same issue adjudicated a fourth time, without disclos-

---

**17.** Petitioner alleges that these favorable statements are correct because they correspond to the psychological evaluation by Dr. Schwartz, which Petitioner defines as "accurate statements" in contrast to unfavorable and, therefore, "inaccurate statements" in the

BOP report. *See* Docket Entry No. 1, at 22. The "accurate statements" cited by Petitioner state that Petitioner's age group of mid-30's persons, as well as Petitioner's ethnicity, render him a particularly low risk for dangerous behavior. *See id.*

ing or discussing the previous three court rulings.

The fifth narrative bears a heading that reads "The one-person parole board used the [BOP] false, inaccurate and misleading report to deny [Petitioner] parole without cause" and states Petitioner's belief that the fact of the Parole Commission's reference to the BOP report without express discussion of Dr. Schwartz' conclusions must be indicative of the Parole Board's ignorance of Dr. Schwartz' report and testimony. *See id.* at 30–32. These allegations, the same as the ones in Petitioner's fourth narrative, were presented to and addressed in Petitioner's *2241–II, Bivens– V* and *Bivens–VI* actions. Again, Petitioner seeks a fourth bite of this well-chewed apple.

Starting from his sixth narrative on, the Petition becomes progressively patchy, although it essentially keeps readdressing the matters addressed in *2241–II, Bivens– V* and *Bivens–VI* actions. Specifically, the sixth narrative (titled "Chief psychiatrist Marcia Baruch's comments regarding the [BOP] report effectively supports Petitioner's release, although inaccurate") simultaneously alleges that: (a) Ms. Baruch's handwritten note indicated her opinion that the BOP report was "positive and in [Petitioner's] favor"; (b) nonetheless, it "is clear [to Petitioner that] the [BOP] report was . . . used to deny [him] parole"; (c) such denial was improperly rendered by Ms. Pinner, a Parole Board examiner, because Ms. Pinner "noted she wasn't a psychiatrist" and, thus, should not have been in the position to disagree with Dr. Schwartz' conclusions favorable to Petitioner's parole prospects. *Id.* at 32–33.

The seventh narrative further elaborates on the same. Titled "[The Parole Board]

consistently and systematically used the false, inaccurate and misleading [BOP] report . . . adopted by Examiner Kathleen Pinner as gospel to deny [Petitioner] parole in 2004 and 2006, although contradicted by two leading forensic experts," this seven-page narrative asserts that Ms. Pinner improperly denied Petitioner parole by relying on the BOP report and unduly ignored Petitioner's institutional record and opinions of Dr. Schwartz and another psychiatrist, Dr. Hilkey (who was hired by Petitioner's parents to evaluate Petitioner and recommended Petitioner's parole). *See id.* at 33–40. In addition, Petitioner asserts that his parents and a certain prison official (referred to as "Counselor Martinez") were denied an opportunity to be present during Petitioner's parole hearing (and, thus, to state during the hearings their arguments in support of his parole). *See id.* at 34–36. Finally, Petitioner elaborates on: (a) alleged obstacles posed by prison officials as to Dr. Hilkey's evaluation of Petitioner and Petitioner's efforts to invite his parents and Guyanese embassy officials to his parole hearings; (b) alleged confidential information he received prior to the hearing that Ms. Pinner was predisposed to denying him parole and ignoring reports of Drs. Schwartz and Hilkey; and (c) alleged undue actions by unspecified prison officials preventing other unspecified prison officials from acting on the latter's desire to support Petitioner's parole application. *See id.* at 34–40. Short of the allegations against Ms. Pinner (which substantively mimic those addressed in Petitioner's *2241–II, Bivens–V* and *Bivens–VI* ), Petitioner's claims in the seventh narrative are identical to those set forth in his current *Bivens–VII* action.[18]

---

**18.** A joint reading of Petitioner's instant Petition and Petitioner's *Bivens–VII* complaint suggest that the person identified as "Counselor Martinez" was a prison official willing to provide statements in favor of Petitioner's parole.

The eighth narrative, titled "Petitioner has challenged the [BOP] report through the BOP administrative remedy," addresses the events of 2003 and suggests that the BOP report was prepared in retaliation for Petitioner's use of prison law library, that is, in violation of Petitioner's First Amendment rights. *See id.* at 40. The next narrative, ninth in the list, is limited to one paragraph and presents Petitioner's conclusion that the opinions of Drs. Schwartz and Hilkey, plus Petitioner's institutional accomplishments, should have insured Petitioner's release on parole. *See id.* at 41.

The tenth narrative is titled "[the] Parole Board has used ex post facto to deny [Petitioner] parole." *See id.* at 41. It asserts, "When [P]etitioner came to prison, he remembers that two/three members would appear at the parole board; however, during his [last] five hearings, a one-person board" was utilized. *Id.* Although Petitioner does not expressly make such an allegation, Petitioner's statements might be interpreted as suggesting that these last five parole hearings violated his right to multi-person parole board which, he believes, was mandated by the 1985 Parole Board Manual. *See id.* at 41–43. The remainder of the narrative is dedicated to discussion of Petitioner's unsuccessful efforts to obtain a copy of that manual. *See id.* Short of the *ex post facto* aspect, the allegations set forth in the tenth narrative are identical to those addressed in Petitioner's *Mandamus–I, 2241–II* and *Bivens–V* actions. He now raises his *ex post facto* claim a fourth time.

The last three parts of the Petition are: (1) "Case citation supporting Petitioner's immediate release," a three-page discussion alleging that, under the holding of *Mickens–Thomas v. Vaughn,* 355 F.3d 294 (3d Cir.2004), the Parole Board was obligated to release Petitioner on parole; (2) "Unit Team [meeting] on October 3, 2007," a discussion of statements made by Petitioner's Case Manager, who opined during the meeting that Petitioner's upcoming parole hearing would result in denial of parole because Ms. Pinner is scheduled to represent the Parole Board on that upcoming hearing; [19] and (3) "Conclusion" reciting Petitioner's opinion that Ms. Pinner was not a proper "Parole Board" and unduly denied him parole. *Id.* at 43–47.

The Petition concludes with the following requests for relief:

1. Expungement of the BOP report from Petitioner's prison file;

2. Mandatory testimony by Drs. Schwartz and Hilkey, as well as by Petitioner's parents and Mr. Martinez, at Petitioner's next parole hearing;

3. Presence of two or three Parole Board members (rather than one) during Petitioner's next parole hearing;

4. Exclusion of Ms. Pinner from the Parole Board presiding over Petitioner's next parole hearing;

5. Production of a copy of 1985 Parole Board Manual to Petitioner;

6. Elimination of all references to Petitioner's frictions with correctional officers (as well as references to all ensuing grievances) from the BOP report, since these references violated Petitioner's First Amendment rights; [20]

---

**19.** Allegedly, Petitioner's Case Manager "stated [that] Petitioner should be less litigious and Petitioner [responded that,] as a minority[,] he has to litigate to be heard, as no one is or has been taking time to review [his] records." Pet. at 46.

**20.** In light of Petitioner's request for *complete* expungement of the BOP report, this Court is

7. The holding of an evidentiary hearing, seemingly in lieu of Petitioner's next parole hearing, to determine whether Petitioner should be released on parole; and

8. This Court's detection of such statutes and/or case law that would provide a basis allowing the Petition to proceed past the *sua sponte* dismissal stage. *See id.* at 47–48.

### C. Supplement to the Instant Petition

The Supplement to the Petition is an eight-page document consisting of two subparts. The first one asserts that the Parole Board abused its discretion in denying Petitioner's parole during an unspecified parole hearing. The argument: (a) is based on a number of cases outside this Circuit, and (b) asserts that, in Petitioner's case, the BOP report must be deemed unreliable evidence in light of Drs. Schwartz and Hilkey's opinions that Petitioner should be released on parole. *See* Docket Entry No. 3, at 1–6. The second subpart asserts that, in light of Drs. Schwartz and Hilkey's opinions that Petitioner should be released on parole, the BOP report should be deemed not "objective" and, therefore, the Parole Board's reliance on the BOP report should be deemed a "vindictive" violation of Petitioner's due process rights. *See id.* at 6–7. The Supplement concludes with Petitioner's request to reverse an unspecified Parole Board's decision to deny Petitioner parole. *See id.* at 7.

### D. Joint Reading of the Petition and Supplement

A joint reading of 164 pages of the Petition, exhibits accompanying the Petition and the Supplement indicates the presence of three groups of claims resembling in their nature either: (1) a procedural motion; or (2) a civil rights complaint under *Bivens*; or (3) a *habeas corpus* petition under § 2241. As the following discussion explains, this Court lacks jurisdiction under § 2241 over the claims in the nature of a procedural motion or those that could be raised only in a civil rights complaint. Consequently, Petitioner's allegations will be dismissed for that reason and, in addition, because many, if not all, of these claims are duplicative of those previously rejected by this and other courts. However, to the extent that any *Bivens* claim is not barred by *res judicata*, the dismissal of that claim is without prejudice to the presentation of that claim in a separate new *Bivens* complaint.[21]

The allegations cognizable under § 2241 are of two types: (1) those, which are expressly stated but fail to allege a violation of federal law; and (2) those that might be implied but not expressly stated. This Court will dismiss the latter group of allegations, but Petitioner will be allowed to amend his Petition if he desires to attempt to articulate his potentially implied

---

not entirely clear as to whether the request for *selective* expungement of these references within the BOP report (which, allegedly, violated Petitioner's First Amendment rights) is an alternative relief that Petitioner seeks.

21. Any such new *Bivens* complaint must comply with the commands of Rule 8 of the Federal Rules of Civil Procedure, which requires both a short, plaint statement of the court's basis for jurisdiction and a short, plain statement of the claim and the relief requested, and a demonstration that the *Bivens* claim is "new," that is, not previously or currently presented in any complaint or petition addressed on merits by any federal court. Any such new *Bivens* complaint should not duplicate or rehash the claims already attempted to be set forth in the *Bivens–VII* action presently pending before Judge Kugler.

claims under Section 2241, provided that Petitioner executes such amendment in accordance with the below-detailed habeas requirements.

### E. Post–Supplement Submissions In This Action

Following his filing of the Supplement, Petitioner made three more filings in this matter addressed to this Court.[22] The first of these three filings was received by the Clerk on April 23, 2008; it was Petitioner's motion for appointment of *pro bono* counsel.[23] *See* Docket Entry No. 7. The second filing, received by the Clerk on June 3, 2008, was titled "Petitioner's Request for an Order to Show Cause" ("OTSC–I"). *See* Docket Entry No. 8. The OTSC–I requested appointment of Mr. David E. Schafer, an Assistant Federal Public Defender ("Schafer"), as Petitioner's counsel in this matter. *See id.* Petitioner clarified that he selected Schafer as the counsel of his choice because "Schafer

has a substantial amount of experience dealing with the Parole Commission."[24] Finally the Clerk received a letter from Petitioner addressed to this Court ("OTSC–II"). *See* Docket Entry No. 9. The OTSC–II consisted of two pages, one typed, one handwritten. *See id.* The typed portion of the OTSC–II re-requesting Schafer's appointment and, in addition, asserted that the case law cited by Petitioner "completely supported [Petitioner's] release and legion [sic] on [Petitioner's] behalf." *Id.* at 1. The typed portion also notified the Court of Petitioner's disappointment with the fact that the original Petition, filed at the end of October of 2007, "has not been served." *Id.* Continuing in the same vein, the handwritten portion of the OTSC–II demanded prompt service of the Petition upon Respondent on the grounds that Petitioner's parole hearing (originally expected to take place on June 2008) was re-scheduled for May 5, 2008. *See id.* at 2. The demand was accompanied by Petitioner's observation that

**22.** In addition, Petitioner filed a letter addressed to the Chief Judge Garrett E. Brown. *See* Docket Entry No. 4.

**23.** [T]here is no *pro bono* counsel in habeas cases[. However, the] Court has discretion to appoint a federal public defender or a CJA attorney to represent a ... habeas petitioner when the petitioner is financially eligible for CJA appointment *and* the appointment of counsel is in the interest of justice. *See* 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B).... In making its discretionary determination, the Court shall consider various factors, including: (a) complexity of issues; (b) whether factual investigation is needed; (c) whether issues presented are straightforward and capable of resolution on the record; and (d) whether petitioner is capable of presenting his claims, understanding the issues, and meeting the court's procedural requirements. *See Reese*, 946 F.2d at 263–4. *Salaam v. Brown*, 04–1617(DMC), Docket Entry No. 29, at 2–4. Here, the issues presented by Petitioner are not complex (although Peti-

tioner's submissions continually confuse and conflate them), the pertinent facts are extensively detailed in a multitude of lengthy exhibits, and Petitioner's well-documented ability to produce voluminous legal submissions in this and other matters suggests that he is capable of not merely understanding but also of diligently presenting the issues.

**24.** Petitioner's logic is not entirely clear to this Court, since the instant matter is not an administrative parole hearing. Rather, this action is a habeas court proceeding not involving any "dealing with the Parole Commission." *See* Docket Entry No. 8, at 1. Petitioner's additional clarification that Schafer should be appointed to represent Petitioner because Schafer would be able to obtain transcription of Petitioner's unspecified parole hearing (to verify Petitioner's assertions as to the events that took place during that unspecified hearing) does not cure the aforesaid illogic, since this Court's assessment of the Petition and the Supplement, at the instant juncture, is already based on a presumption that Petitioner's factual assertions as to the events of his parole hearings are true.

the May 2008 parole hearing would necessarily violate his federal rights.[25] *See id.* at 2. Bewilderingly, the OTSC–II predicting violations of Petitioner's rights during the May 5, 2008, hearing, was mailed on June 23, 2008 (that is, a month and a half *after* the hearing), and the typed portion bore the date of June 23, 2008, while the handwritten one was dated as of March 26, 2008. *See id.* at 1–3.

## III. DISCUSSION

### A. *The Nature of Habeas Action and Pleading Requirements*

28 U.S.C. § 2241 provides, in pertinent parts:

Writs of *habeas corpus* may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.... The writ of *habeas corpus* shall not extend to a prisoner unless ... he is in custody in violation of the Constitution or the laws or treaties of the United States.

28 U.S.C. § 2241(a) and (c)(3).

■ Although *pro se* applications are construed liberally and with a measure of

tolerance, *see Royce v. Hahn,* 151 F.3d 116, 118 (3d Cir.1998); *Lewis v. Attorney General,* 878 F.2d 714, 721–22 (3d Cir. 1989), "[h]abeas corpus petitions must meet heightened pleading requirements." *McFarland v. Scott,* 512 U.S. 849, 856, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994). "Federal courts are authorized to dismiss summarily any *habeas* petition that appears legally insufficient on its face." [26] *McFarland,* 512 U.S. at 856, 114 S.Ct. 2568; *Siers v. Ryan,* 773 F.2d 37, 45 (3d Cir. 1985), *cert. denied,* 490 U.S. 1025, 109 S.Ct. 1758, 104 L.Ed.2d 194 (1989); *see also Mayle v. Felix,* 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005).

Federal law provides two avenues of relief to prisoners: a petition for *habeas corpus* and a civil rights complaint. *See Muhammad v. Close,* 540 U.S. 749, 750, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004). "Challenges to the validity of any confinement or to particulars *affecting its duration* are the province of *habeas corpus* ... [while] requests for relief turning on *circumstances of confinement* [fall within the realm of] a § 1983 action." [27] *Id.* (empha-

---

**25.** Since an order directing service of a litigant's pleading cannot operate as that resolving a legal action in favor of the litigant, it appears that Petitioner's request as to the issuance of an order directing service upon Respondent was made with the hope of causing an *in terrorem* effect. However, if so, such service would be indeed unwarranted. *See Bell Atl. Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (explaining that a litigant with a largely groundless claim should not be allowed to take up the time of a number of other people, since the litigant's right to do so might cause an unwarranted *in terrorem* effect) (relying on *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), relying, in turn, on *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975)).

**26.** Therefore, Habeas Rule 4 requires the Court to examine a petition prior to ordering an answer and to summarily dismiss the petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." *See* 28 U.S.C. § 2254 Rule 4, applicable to § 2241 petitions through Habeas Rule 1(b). Moreover, the Habeas Rules obligate the petitioner to "to specify all the grounds for relief, state the facts supporting each ground," and to prepare a "petition [which does] substantially follow either the [pre-printed *habeas* petition] form [distributed by the Clerk] or a form prescribed by a local district-court rule". *See* 28 U.S.C. § 2254 Rule 2(c), applicable to § 2241 petitions through Habeas Rule 1(b).

**27.** In a series of cases beginning with *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Supreme Court analyzed the intersection of civil rights and *habe-*

sis supplied). As § 1983 applies only to state actions, it is not available to federal prisoners; the federal counterpart is an action under *Bivens* alleging deprivation of a constitutional right. *See Brown v. Philip Morris, Inc.*, 250 F.3d 789, 801 (3d Cir.2001) ("A *Bivens* action . . . is the federal equivalent of the § 1983 cause of action against state actors, [it] will lie where the defendant has violated the plaintiff's rights under color of federal law").

The Court of Appeals for the Third Circuit explained the distinction between the availability of civil rights relief and the availability of *habeas* relief as follows:

> [W]henever the challenge ultimately attacks the "core of *habeas* "—the validity of the continued conviction or the fact or length of the sentence—a challenge, however denominated and regardless of the relief sought, must be brought by way of a *habeas corpus* petition. Con-

versely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate.

*Leamer v. Fauver,* 288 F.3d 532, 542 (3d Cir.2002).

 Therefore, a prisoner is entitled to a writ of *habeas corpus* only if he "seek[s] to invalidate the duration of [his] confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [government's] custody." *See Wilkinson v. Dotson,* 544 U.S. 74, 81, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005). In contrast, if a judgment in the prisoner's favor would not affect the fact or duration of the prisoner's incarceration, *habeas* relief is unavailable and a civil complaint is the appropriate form of remedy.[28] *See,*

---

*as corpus.* In *Preiser,* state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate or speedier release. *See id.* at 476, 93 S.Ct. 1827. The prisoners did not seek compensatory damages for the loss of their credits. *See id.* at 494, 93 S.Ct. 1827. Assessing the prisoners' challenge, the Supreme Court held that a prisoner must bring a suit for equitable relief that, effectively, challenges "the fact or duration of confinement" as a *habeas corpus* petition. *See id.* at 500, 93 S.Ct. 1827.

**28.** Unlike *habeas* actions, civil rights cases require a filing fee, either as a prepayment or a series of installment payments. *See* 28 U.S.C. § 1915. The filing fee for a *habeas* petition is $ 5.00, and inmates filing a habeas petition who are granted *in forma pauperis* status do not have to pay the filing fee. *See Santana v. United States,* 98 F.3d 752 (3d Cir.1996) (filing fee payment requirements of PLRA do not apply to *in forma pauperis* ha-

beas corpus* petitions and appeals). In contrast, the filing fee of a civil rights complaint is $ 350.00. Inmates filing a civil rights complaint who proceed *in forma pauperis* are required to pay the entire filing fee in monthly installments which are deducted from their prison account. *See* 28 U.S.C. § 1915(b). In addition, if a prisoner has, on three or more occasions while incarcerated, brought an action or appeal in a federal court that was dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from immune defendants, then the prisoner may not bring another action *in forma pauperis* unless he or she is in imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g). Because of these differences, the courts generally do not *sua sponte* re-characterize a *habeas* pleading as a civil rights complaint. Moreover, here such re-characterization is wholly unavailable, since: (a) Petitioner is barred from filing *in forma pauperis* by the above-discussed "three strikes" rule, *see Toolasprashad v. Williams,* 07–5860(RBK), Docket Entry No. 2; and (b) his Petition does not indicate that

*e.g., Ganim v. Federal Bureau of Prisons,* 235 Fed.Appx. 882 (3d Cir.2007) (holding that district court lacks jurisdiction under § 2241 to entertain prisoner's challenge to his transfer between federal prisons); *Bronson v. Demming,* 56 Fed.Appx. 551, 553–54 (3d Cir.2002) (habeas relief was unavailable to inmate seeking release from disciplinary segregation to general population, and district court properly dismissed *habeas* petition without prejudice to any right to assert claims in properly filed civil rights complaint). Recently, the Court of Appeals emphasized that, where an inmate files an application

> alleging that [the Parole Board officials] violated his due process rights ... at his parole eligibility hearings by relying on the fabricated evidence in denying his parole, [the application does not present a "core" *habeas* challenge because] the Parole Review Board still could have denied him parole at his review hearing [relying on non-falsified evidence, since] the Parole Review Board bases its decision to grant or deny parole on numerous factors....

*Fain v. Morgan,* 255 Fed.Appx. 644, 644–45 (3d Cir. Nov. 28, 2007). Accordingly, the *Fain* court concluded that, where the

---

he is in imminent danger of serious physical injury.

**29.** Notably, the Court of Appeals reached this conclusion, even though the inmate's original application in *Fain* sought no curative hearing and contained numerous allegations that the parole board denied the inmate "required release." *See Fain v. Morgan,* 06–4404(JAP), Docket Entry No. 1, at 5–8, 10.

**30.** The standard of review (applicable to *habeas* petitions and discussed in the preceding Section of this Opinion) is a matter of law not subject to this Court's discretion.

**31.** Moreover, in light of the fact that Petitioner twice presented his request for production of the Manual to different courts and had this claim twice denied on merits, once in his *Mandamus–I* action and once in his *2241–II* matter, Petitioner's current "re-challenge" (a)

---

inmate's motion for reconsideration requests a curative parole hearing, the inmate's entire application should be read as a civil rights complaint rather than a petition stating a *habeas* challenge.[29] *See id.* at 644–45.

## B. Claims Not Cognizable Under § 2241

Three of Petitioner's claims for relief fall entirely outside this Court's § 2241 jurisdiction. Specifically, Petitioner's request for detection of such statutes and/or case law that would provide a basis allowing the Petition to proceed past the *sua sponte* dismissal stage does not present either a *habeas* challenge, or a *Bivens* challenge, or a cognizable challenge of any kind.[30] Similarly, Petitioner's request for production of the 1985 Parole Board Manual has no bearing on either the fact or duration of Petitioner's confinement and, thus, falls outside § 2241 jurisdiction.[31] *See, e.g., Ganim v. Federal Bureau of Prisons,* 235 Fed.Appx. 882. Finally, Petitioner's request for a parole eligibility hearing by this Court (which Petitioner defines as an "evidentiary hearing") is also a claim outside the scope of § 2241.[32]

---

is barred by the doctrine of *res judicata,* and (b) presents a successive petition not subject to this Court's review. *See Sanders v. United States,* 373 U.S. 1 at 15–17, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (A "successive petition" raises grounds identical to those raised and rejected on the merits on a prior petition).

**32.** This Court cannot hold an evidentiary hearing *in lieu* of Petitioner's parole hearing since such action would unduly usurp the mandate of the Parole Board and violate core separation-of-power postulates. *See, e.g., Billiteri v. United States Board of Parole,* 541 F.2d 938, 943–44 (2d Cir.1976).

> There is no precedent for the district court's action in holding its own parole hearing on which it predicated its order to the Parole Board to release [the petitioner] on parole. As a statutory court, the United States District Court had no power to conduct such a proceeding and issue such an order. Con-

Petitioner's *Bivens*-like claims for relief expressly stated in his Petition could be roughly subdivided into two categories: (1) claims seeking expungement of the BOP report from Petitioner's file or, in the alternative, expungement of what Petitioner calls "chilling speech violations," *i.e.*, references to Petitioner's frictions with the correctional officers and Petitioner's ensuing grievances; and (2) claims seeking injunctive relief in the form of a curative (or future) hearing that would exclude the allegedly biased examiner Ms. Pinner, include two or three member Parole Board, as well as oral testimonies by Drs. Schwartz and Hilkey, Petitioner's parents and Mr. Martinez. Neither category of these claims, however, presents a true *habeas* challenge. Moreover, even if construed as § 2241 challenges, these claims do not merit *habeas* relief, for the reasons next discussed.

### 1. Expungement Claims

#### a. *Complete Expungement of the BOP Report*

As previously explained to Petitioner in rejecting the *Bivens–V* complaint, the only case in this Circuit on the issue of expungement is *Williams v. Federal Bureau*

*of Prisons*, 85 Fed.Appx. 299 (3d Cir.2004), a case decided before the Supreme Court's ruling in *Wilkinson v. Dotson*, 544 U.S. 74, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005).

In *Williams*, the inmate-petitioner filed a *pro se* § 2241 habeas petition claiming that federal officials had improperly refused to delete false information contained in his prison file. *See id.* at 303. Examining that petition, the magistrate judge employed the rationale later articulated by the Supreme Court in *Wilkinson* and "concluded that, since [the inmate's] *habeas* claims did not challenge the length of his confinement, the *habeas* petition [had to] be construed as a *Bivens* action." *Id.* The district court adopted the magistrate judge's conclusion and, eventually, dismissed the petition. *See id.* The inmate appealed.

Addressing the issue, the Court of Appeals observed as follows:

> We have never had to decide whether to endorse the right of expungement announced in *Paine v. Baker*, 595 F.2d 197 (4th Cir.1979), and other Circuit Courts of Appeals have expressly questioned its precedential value. [*See* ] *Johnson v. Rodriguez*, 110 F.3d 299, 308–09 n. 13 (5th Cir.1997). Nevertheless, [the in-

gress has vested in the sound discretion of the Parole Board the sole power to grant or deny parole. [*See* ] 18 U.S.C. § 4203[;] *Buchanan v. Clark*, 446 F.2d 1379, 1380 (5th Cir.), *cert. denied*, 404 U.S. 979, 92 S.Ct. 347, 30 L.Ed.2d 294 (1971); *Tarlton v. Clark*, 441 F.2d 384, 385 (5th Cir.), *cert. denied*, 403 U.S. 934, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971); . . . *United States v. Frederick*, 405 F.2d 129 (3rd Cir.1968). "The courts are without power to grant a parole or to judicially determine eligibility for parole. Furthermore, it is not the function of the courts to review the discretion of the Board in the denial of applications for parole, or to repass on the credibility of reports and information received by the Board in making its determinations." *Brest v. Ciccone*, 371 F.2d 981, 982–83 (8th Cir.

1967). . . . The only remedy the court can give is to order the Board to correct the abuses or wrongful conduct within a fixed period of time, after which, in the case of non-compliance, the court can . . . order the prisoner discharged from custody.

*Id.; accord Furnari v. United States Parole Comm'n*, 531 F.3d 241, 245–46 (3d Cir.2008) (the remedy for improper parole hearing is a conditional order granting the petition and directing a curative statement of reasons for denial of parole or a *de novo* parole hearing by the Parole Commission); *Mickens–Thomas*, 355 F.3d 294 (finding that the remedy of release on parole was proper where the court granted the petitioner conditional relief of *habeas corpus* and remanded his matter to the Board for a *de novo* hearing, but the Board failed to comply).

mate in *Williams* ] argues that his … prison file expungement claims are meritorious under *Paine v. Baker.* There, the Court of Appeals for the Fourth Circuit announced that, in limited circumstances, state prisoners have a federal due process right to have "prejudicial erroneous information expunged from their prison files." [*See Paine,*] 595 F.2d at 202. The court held:

> In certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied upon to a constitutionally significant degree.

*Id.* at 201. [The inmate now] argues that he can assert *Paine v. Baker* expungement claims in a § 2241 habeas petition. Even if we assume *arguendo* that [the inmate] can assert a *Paine v. Baker* expungement claim in a § 2241 habeas petition, it is nevertheless clear that he is not entitled to relief [of expungement of] his prison file [where the information on file is an opinion implicating no liberty interests].

*Williams,* 85 Fed.Appx. at 303.

■ The Court of Appeals' use of the "arguendo" language, read in light of the Supreme Court's decision in *Wilkinson* (as well as in light of the *Williams* magistrate judge's conclusion that the *Williams* petition posed a purely-*Bivens* claim) indicates that an expungement claim falls outside § 2241 jurisdiction and has to be raised in a separate *Bivens* action. Moreover, even if this Court is to overlook this threshold shortcoming, it was already explained to Petitioner in *Bivens-V* that he

> fails to state a claim even under the rule announced in *Paine.* Under *Paine,* a prisoner must allege three elements in order to state a due process claim for expungement: (1) that particular infor-

mation exists in his file, (2) that the information in his file is false, and (3) that the information is relied on to a constitutionally significant degree. [*See* ] 595 F.2d at 201. With respect to the second element, the *Paine* court stated,

> > [I]t is not sufficient that the inmate disputes evaluations and opinions regarding him. [*See* ] *Williams v. Ward,* 556 F.2d 1143 (2d Cir.), *cert. dismissed,* 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977) (inmate disagreed with psychiatric evaluations contained in file).… The federal courts will not oversee the discretionary decisions of prison administrators and second-guess their evaluations. [*See id.*] at 201.

> As [Petitioner] presents the type of claim explicitly excluded by the *Paine* court, a challenge to a psychological evaluation, he does not state a due process claim for expungement of records contained in his BOP or parole file.

*Bivens-V,* Civil Action No. 04–3219, Docket Entry No. 10, at 9–11.

■ Finally, in light of the facts that: (a) Petitioner raised the same claims in his *2241-II* and *Bivens-V* actions; (b) Judge Rodriguez ruled, in the *2241-II* action, that Petitioner's allegations do not merit *habeas* relief; and (c) this Court expressly clarified in the *Bivens-V* opinion that Petitioner's expungement claim is without merit under the holdings of *Williams,* 85 Fed.Appx. at 303, and *Paine v. Baker,* 595 F.2d 197, the part of the Petition containing Petitioner's recitation of the expungement allegations twice dismissed presents a meritless and, in addition, non-reviewable "successive petition." *See Sanders,* 373 U.S. at 15–17, 83 S.Ct. 1068.

**b. *Partial Expungement***

Petitioner's partial expungement claim is fleshed out less than that seeking com-

plete expungement. The relief Petitioner expressly seeks reads as follows: "Strike from the [BOP] report the chilling speech violations" and refers the reader to paragraphs 21 to 24 of his Petition. *See* Pet. at 48. These four paragraphs provide the following information and allegations:

In his Paragraph 21, Petitioner quotes the following statements from the BOP report:

According to information received from the Unit Team at FCI Petersburd, [Petitioner] verbally confronted members of his Unit Team and threatened to file a complaint because the team did not have all of the documentation he deemed necessary in his [BOP] file. According to his case manager, [Petitioner] questioned her understanding of BOP policy regarding being seen by his unit team. [Petitioner] insisted that he was not required to meet with team members as a matter of policy.

Pet. at 19. After so quoting, Petitioner asserts that the aforesaid statements from the BOP report are both incorrect and prejudicial, even though Petitioner's other allegations in his Petition (containing his recollection of the pertinent events) indicate that the statements in the BOP report are factually correct.[33] *See id.*

In his Paragraph 22, Petitioner continues to elaborate on the above-quoted statements in his BOP report[34] and alleges that the fact of prison officials disclosing the arguments they had with Petitioner to Dr. Berry, the preparer of the BOP report, is prejudicial because it "prevent[ed] ... petitioner from speaking-chilling speech." Petitioner, thus, concludes that the facts related by prison officials to Dr. Berry should be stricken from the BOP report. *See id.* at 20.

In his Paragraph 23, Petitioner asserts that if Dr. Berry's statements (which Petitioner challenges as unfavorable to his parole prospects) are not stricken, the Court should direct the Parole Board to interpret these unfavorable statements as favorable because Dr. Berry did not include in these statements a conclusion that Petitioner was aggressive. *See id.*

In the last paragraph, *i.e.*, Paragraph 24, Petitioner asserts that, during or prior to the year of 2000, Dr. Pugh (who supervised Dr. Berry's preparation of the BOP report and signed it) was interfering with Petitioner's visits to law library, where Petitioner was preparing his application for post-conviction relief, studying various BOP policies and writing letters for illiterate inmates.[35] Petitioner concludes this

---

**33.** According to Petitioner: (a) he appeared before his team to explain to the team members that they failed to follow a certain BOP policy by providing him with an unduly short notice about the meeting; and (b) he expressed his disapproval of the fact that his prison file did not contain certain documents that he wished to be in the file. *See* Pet. at 19. Since the statements in the BOP report indicate that Petitioner did make an appearance during which he argued about the BOP policy and lack of certain documents in his prison file, the statements in the BOP report appear to be accurate.

**34.** Specifically, Petitioner asserts that: (a) "he did not question[] the case manager about [BOP] policy [but rather only] com-

mented" that the policy was not followed; and (b) "Petitioner did not say he did not have to meet with the team [but rather] he indicated that the team [meeting] should be postponed" and reminded the team that he "may 'waive' team appearance." Pet. at 20. Petitioner's assertions, however, appear to be in complete coherence with the facts included by Dr. Berry in Petitioner's BOP report, *compare* Pet. at 19 to Pet. at 20, and Petitioner's disagreement appears to be stylistic rather than factual.

**35.** Petitioner asserts that he did not file his post-conviction relief applications because of Dr. Pugh's actions. The factual aspect of this allegation is not entirely clear to this Court, since Petitioner filed three § 2255 motions

Paragraph with the statement that Dr. Pugh was "effectively ... 'chilling speech' suppressing [Petitioner's] First [A]mendment rights." *Id.* at 21.

Liberally construed, Petitioner's Paragraph 24 indicates Petitioner's desire to assert a time-barred First Amendment access-to-court civil rights claim, while his Paragraph 22 statements might be interpreted as a time-barred First Amendment retaliation claim.[36] However, these First Amendment *Bivens*-like allegations cannot be raised under Section 2241: this Court lacks § 2241 jurisdiction to address these claims. *See Ganim,* 235 Fed.Appx. 882; *Bronson v. Demming,* 56 Fed.Appx. at 553–54. Moreover, since Petitioner's assertions in Paragraphs 21 to 23 verify the factual correctness of Dr. Berry's statements in Petitioner's BOP report, they do not provide basis for expungement regardless of whether or not the jurisdictional basis is present. *See Paine,* 595 F.2d at 201 (a prisoner must allege that the information in his file is *false* in order to state a due process claim for expungement).

### 2. Curative/Future Parole Hearing Claims

The second category of Petitioner's non-motion-like claims for relief expressly stated in his Petition appear to challenge Petitioner's upcoming parole hearing to be held in the summer of 2008. *See* Pet. at 46 ("[P]etitioner shouldn't expect parole [because] it is obviously clear that once again decisions have already been made adverse to him—and it appears as the outcome of

his June 2008 parole hearing has been decided to deny parole"). Specifically, Petitioner seeks to ensure that: (1) Drs. Schwartz and Hilkey, as well as Petitioner's parents and Mr. Martinez, will be allowed to testify in person at this upcoming parole hearing; (2) the Parole Board will consist of two or three examiners rather than one; and (3) Ms. Pinner will not be one of those examiners. Petitioner asserts that, unless these conditions are met, his upcoming parole hearing will violate his constitutional rights. *See* Pet. at 47.

■ It is self-evident that Petitioner's allegations as to his *future* parole hearing are speculative and do not warrant *habeas* relief. *See* 28 U.S.C. § 2241(c)(3) (the language of § 2241 is set forth in present rather than in future terms, *i.e.,* it reads: "The writ of habeas corpus shall not extend to a prisoner unless ... he *is* [rather than *will be* ] in custody in violation of the Constitution or the laws or treaties of the United States") (emphasis supplied); *see also Phifer v. Clark,* 115 F.3d 496, 1997 U.S.App. LEXIS 13007 (7th Cir.1997) (dismissing the petition where the petitioner's "suggested adverse consequences [are] speculative. Each depends upon possible discretionary actions that may or may not affect future parole decisions").

Therefore, this Court gives Petitioner's application the benefit of the doubt and construes his allegations as stating that: (a) a certain unspecified Petitioner's parole hearing was procedurally deficient;[37] and

---

challenging his conviction, and then appealed denial of these motions in his *2255–I, 2255–II* and *2255–III* actions dismissed on the merits by the Court of Appeals for the Fourth Circuit.

**36.** Even under the rules of liberal construction, this Court cannot read Petitioner's Paragraphs 21 and 23 statements as asserting any type of cognizable legal claim.

**37.** Since Petitioner's ten-narratives-plus-five-memoranda submission constituting his Petition and Supplement, as well as his 110 page appendix, detail events during all Petitioner's parole hearings and, in addition, numerous events that took place in between these hearings, this Court has no way of determining which particular parole hearing(s) petitioner believes to be procedurally deficient. Similarly, this Court has no way of establishing

(b) Petitioner seeks injunctive relief in the form of an order directing that that future parole hearing will be proper.[38] Yet, if so, Petitioner's allegations must be brought under *Bivens* (mirroring those addressed by the Supreme Court in *Wilkinson* ) rather than as a *habeas* action.

This Court, however, will assume, at the instant juncture, that Petitioner's allegations could be brought under § 2241 for the following reasons.

The distinction between *habeas* and civil rights actions dating back to *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), is based on the Supreme Court's rationale that a prisoner cannot evade the requirements of the *habeas* mandate by presenting his *habeas* challenges in the wrap of a civil rights complaint. *See Preiser,* 411 U.S. at 489– 490, 93 S.Ct. 1827 ("It would wholly frustrate explicit congressional intent to hold that [prisoners] could evade [*habeas* ] requirement[s] by the simple expedient of putting a different label on their pleadings"). The same rationale applies vice-versa: a prisoner cannot evade the requirements of the PLRA by presenting his civil rights challenges in the wrap of a *habeas* application. *See Ganim,* 235 Fed. Appx. 882; *Demming,* 56 Fed.Appx. 551.

Just as the Court of Appeals' treatment of the claims in *Ganim,* 235 Fed.Appx. 882, and *Demming,* 56 Fed.Appx. 551, the Supreme Court's language in *Wilkinson* stating that "the validly sentenced prisoner who shows only that the [government] made a procedural error in denying discretionary parole ... cannot obtain habeas relief—conditional or otherwise," 125 S.Ct. at 1251 (Scalia, J., concurring), suggests that a *Wilkinson* challenge to parole review procedures falls outside the scope of *habeas* mandate and must be brought in a civil rights complaint. Such conclusion appears to be in accord with the PLRA since "[i]t would wholly frustrate explicit congressional intent· to hold that [prisoners] could evade [the PLRA] requirement[s] by ... putting a different label on their pleadings." *Preiser,* 411 U.S. at 489–490, 93 S.Ct. 1827. Moreover, the case at hand is a glaring example of why such conclusion is the only rational application of the PLRA; Petitioner (precluded by the "three strikes" rule from obtaining *in forma pauperis* status) should not be allowed to evade the filing fee requirement by lumping his civil rights claims into a stew of other allegations containing traces of *habeas* flavorings.

However, at the instant juncture, the Court of Appeals for the Third Circuit

with absolute certainty whether Petitioner is "re-challenging" procedural aspects of those parole hearing(s) that were already examined by this or any other court during Petitioner's previous litigations.

**38.** Indeed, if Petitioner's *Wilkinson* parole hearing is: (a) conducted in the presence of Petitioner's parents, and (b) by two parole examiners, none of whom is Ms. Pinner, it does not guarantee that Petitioner would be released on parole or have his prison term shortened. *See Fain v. Morgan,* 255 Fed. Appx. 644, 644–45 (3d Cir.2007) (allegations that the Parole Board violated the inmate's due process rights at his parole eligibility hearings by relying on the fabricated evidence do not present a *habeas* challenge because

"the Parole Review Board still could have denied him parole at his review hearing [relying on non-falsified evidence, since] the Parole Review Board bases its decision to grant or deny parole on numerous factors"); *compare Preiser,* 411 U.S. 475, 93 S.Ct. 1827 (challenges to calculation of good-conduct-time *credits* necessarily affect "the fact or duration of confinement" and, thus, might be raised in a *habeas corpus* petition); *Hunterson v. DiSabato,* 244 Fed.Appx. 455, 458 (3d Cir. 2007) (An action alleging that a parole *revocation* was constitutionally infirm affects, by definition, "the fact or duration of confinement") (citing *Williams v. Consovoy,* 453 F.3d 173, 177 (3d Cir.2006)).

has not held that a *Wilkinson* challenge necessarily must—rather than merely may—be raised in a civil rights complaint. While the Court of Appeals' recent non-precedential decisions so suggest, *see Aruanno v. New Jersey,* 215 Fed.Appx. 157 (3d Cir.2007) (holding that, where an inmate seeks injunctive relief challenging the procedures used during his civil commitment hearing, such challenge presents a civil rights claim); *Fain v. Morgan,* 255 Fed.Appx. 644 (making the same finding as to parole review hearing), a *dictum* by the Court of Appeals in *Coady v. Vaughn,* 251 F.3d 480, 485 (3d Cir.2001) (a case addressing distinctions between two jurisdictional bases for *habeas* applications, Sections 2254 and 2241, rather than distinctions underlying *habeas* and civil rights claims), states that "federal prisoners challenging some aspect of the execution of their sentence, such as denial of parole, may proceed under Section 2241." This *dictum* language indicates that a *Wilkinson* challenge can be entertained under § 2241. Yet, this language provides the Court with uncertain guidance in light of the *Coady* court's observation that "[i]t is a well-established canon of statutory construction that when two statutes cover the same situation, the more specific statute takes precedence over the more general one." *Id.* at 484 (citing, *inter alia, Preiser,* 411 U.S. at 488–89, 93 S.Ct. 1827). In tension with the above-quoted *dictum* language, this rationale suggests that the requirements of the PLRA, a statutory provision narrower than the mandate of § 2241, should preclude this Court from entertaining a *Wilkinson* challenge brought by an inmate

who has three strikes,[39] *see* 28 U.S.C. § 1915(g), under § 2241.

Consequently, at the instant juncture, the law in this Circuit does not mandate the conclusion that *habeas* and civil rights modes are mutually exclusive in all actions. Rather, the current legal regime suggests that civil rights and *habeas* may provide "overlapping" remedies in certain actions which lie at the intersection of challenges to an "execution of the sentence" and those to "conditions of confinement." Since it appears that a *Wilkinson* challenge is one of such actions allowing the inmate an option of choosing between a *habeas* and civil rights modes, this Court will examine Petitioner's *Bivens*-like allegations on the merits. These allegations are subdivided into three groups: (1) those related to parole hearing by one rather than two examiners; (2) those related to denial of attendance of witnesses; and (3) those related to Ms. Pinner's alleged bias. The Court will discuss each group of claims *seriatim.*

#### a. Parole Hearing Conducted by a Single Examiner

Petitioner's tenth narrative, titled "[The] Parole Board has used ex post facto to deny [Petitioner] parole," includes the following statements:

> [The] Parole Board used current rules and procedures at [Petitioner's] five parole hearings to deny parole. Hence, 1985 rules and procedures were supposed to be used, not current, an *ex post facto violation.* ... [D]uring his five hearings a one-person board was the prosecutor, judge, and executioner—all in the hands of one board member....

---

**39.** Furthermore, unlike *Bivens* claims, a § 2241 claim is not subject to a statute of limitations requirement; at most, a § 2241 claim could be subject to the defense of laches. Consequently, a prisoner may, as Petitioner here, challenge procedural sufficiency of an early parole review hearing many times superseded by later parole reviews which could have been procedurally valid.

Having one board member during [P]etitioner's five parole hearings is an *ex post facto* violation . . . .

Pet. at 41–42 (emphasis in original). These statements appear to correspond to: (1) Petitioner's conclusion that *"ex post facto* violations occurred as 'current' rules and procedures [were] used against [P]etitioner and not the correct rules and procedures of 1985," as well as to (4) Petitioner's request for relief seeking an order directing the Parole Board to "conduct [P]etitioner's hearing consistent with 1985 rules, not 'current' rules and procedures, [*i.e.*, with] two or three examiners." *Id.* at 47.

■■■ The Ex Post Facto Clause of the U.S. Constitution bars only those "enactments, which by retroactive operation, increase the punishment for a crime after its commission." [40] *Garner v. Jones,* 529 U.S. 244, 249–50, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000) (relying on *Lynce v. Mathis,* 519 U.S. 433, 445–446, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997); *Cal. Dep't of Corr. v. Morales,* 514 U.S. 499, 508–509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995); and *Collins v. Youngblood,* 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)). While parole regulations may be laws for purposes of *ex post facto* analysis, *see Royster v. Fauver,* 775 F.2d 527, 535 (3d Cir.N.J. 1985) (citing *U.S. ex rel. Forman v. McCall,* 709 F.2d 852 (3d Cir.1983)), "[t]o

be eligible for *habeas corpus* based on a violation of the Ex Post Facto Clause, a petitioner must show both a retroactive change in law or policy and that this change [in parole law] caused individual disadvantage by creating a significant risk of increasing his punishment." *Richardson v. Pa. Bd. of Prob. & Parole,* 423 F.3d 282, 284 (3d Cir.2005) (emphasis removed, internal quotations and citations omitted); *see also Mickens–Thomas v. Vaughn,* 321 F.3d 374, 384 (3d Cir.2003). It follows that not every retroactive change violates the Ex Post Facto Clause, even if the change creates a risk of affecting a particular inmate's terms of confinement. *See Garner,* 529 U.S. at 250, 120 S.Ct. 1362 (citing *Morales,* 514 U.S. at 509, 115 S.Ct. 1597).[41]

■■ However, as a threshold matter, it must be a "law" that makes the punishment more burdensome for ex post facto purposes. *See Jubilee v. Horn,* 959 F.Supp. 276, 282 (E.D.Pa.1997). Although, in the context of parole, the Court of Appeals has stated that if parole guidelines are applied without substantial flexibility, they may constitute laws within the meaning of the Ex Post Facto Clause, *see U.S. ex rel. Forman v. McCall,* 709 F.2d 852, 862 (3d Cir.1983); *see also Crowell v. United States Parole Comm'n,* 724 F.2d 1406, 1408 (3d Cir.1984), an inflexible provision setting forth the number of parole

---

**40.** In *Beazell v. Ohio,* 269 U.S. 167, 170, 46 S.Ct. 68, 70 L.Ed. 216 (1925), the Supreme Court explained:

The constitutional prohibition and the judicial interpretation of it rests upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused.

**41.** The Supreme Court guided that, "[t]he question is 'a matter of degree,'" *see Garner,* 529 U.S. at 250, 120 S.Ct. 1362 (citing *Morales,* 514 U.S. at 507, 510, 115 S.Ct. 1597), and, if the amended law neither modifies the statutory punishment imposed for any particular offenses nor alters the initial date for parole eligibility or the suitability standard, the amendment does not violate the Ex Post Facto Clause, since such amendment would (1) not change the basic structure of state parole law, but (2) merely vest the parole board with a discretionary function. *See id.*

examiners participating in a parole hearing does not constitute a "law" amenable to *ex post facto* challenge, even if a change in that provision effectively substitutes a plurality requirement with the one of unanimity.[42] *See Mickens–Thomas v. Vaughn,* 2000 U.S. Dist. LEXIS 20859, at *29 (E.D.Pa. Aug. 22, 2000), *aff'd,* 321 F.3d 374 (3d Cir.2003); *see also Burnett v. Young,* 746 F.2d 1475, 1984 U.S.App. LEXIS 13795, at *5 (6th Cir.1984) ("application of the revised manual did not violate the [E]x [P]ost [F]acto [C]lause") (citing *Ruip v. United States,* 555 F.2d 1331, 1335–36 (6th Cir.1977) (holding that such provisions are mere guideposts which assist the Commission in exercising its discretion and, as such, coming outside the prohibition against *ex post facto* laws)). Thus, Petitioner's constitutional rights under the Ex Post Facto Clause were not violated when

he had his unspecified parole hearings conducted by a single examiner in accordance with the requirements set forth in the parole manual current at the time of those hearings. Consequently, even if this Court is to presume that it has jurisdiction to entertain this claim pursuant to § 2241, Petitioner's *ex post facto* claim should be dismissed on the merits.[43]

### b. *Presence of Audience and Life Testimony*

Petitioner asserts that,

[until] two days before the parole hearing [which took place on January 21, 2004], Examiner Pinner [had been] refus[ing] to allow Dr. Schwartz and [P]etitioner's parents, as well as [Mr.] Martinez at the parole hearing, whether to say a few words or as observers.[44]

**42.** In addition, the regulation at issue here is indeed a flexible provision reading: "Any hearing may be conducted by a single examiner or by a panel of examiners." 28 C.F.R. § 2.23(a).

**43.** Moreover, in light of Petitioner's *Mandamus–I* and *2241–II* litigations specifically addressing the issue of production of 1985 parole manual, Petitioner's current *ex post facto* challenges (intrinsically related to his aforesaid previous production-based litigations and unambiguously suggesting that Petitioner sought production for the purposes of claiming an *ex post facto* violation) provide this Court with another basis for dismissal of Petitioner's *ex post facto* claim: abuse of writ. When a prisoner files multiple petitions for habeas corpus relief, the abuse of the writ doctrine as set forth in 28 U.S.C. § 2244(a) may bar his claims: No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person ... if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus.... *Furnari,* 531 F.3d at 250 (relying on *Sanders v. United States,* 373 U.S. 1, 9, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963)). "The Court in *Sanders* explained that a court may grant control-

ling weight to a denial of a prior application for habeas corpus when three criteria are met: (1) the same ground presented in the successive application was determined adversely to the applicant on the previous application; (2) the previous determination was made on the merits; and (3) 'the ends of justice' would not be served by reaching the merits of the subsequent application." *Id.* at 21, 83 S.Ct. 1068 (citing *Sanders,* 373 U.S. at 11, 83 S.Ct. 1068).

**44.** Hence, it appears that, on January 19, 2004, Ms. Pinner notified Petitioner that Mr. Martinez, Dr. Schwartz and Petitioner's parents were allowed to attend his parole hearing. Moreover, it appears that Mr. Martinez actually appeared at the hearing, although Petitioner was dissatisfied with the fact that Mr. Martinez was neither allowed to testify as lengthily as Petitioner desired nor permitted to remain as observer of Petitioner's parole hearing after Mr. Martinez completed his testimony. *See* Pet. at 34 and n. 5 (accusing Ms. Pinner of being "hostile, belligerent, ... repeatedly chill[ing Mr. Martinez'] speech by telling him how she did not want to he[a]r it [and] rudely dismiss[ing][Mr.] Martinez and thr[owing] him out of the hearing"). Furthermore, it appears that Dr. Schwartz presented the Parole Board with his life testimony dur-

[During Petitioner's June 5, 2006, parole hearing,] Examiner Pinner refused to allow Dr. Hilkey's presence, the presence of [P]etitioner's family, [Mr.] Martinez, either to say a few words or as observers.

Pet. at 34, 37.

Petitioner's aforesaid statements seem to relate to his: (1) conclusion that Ms. Pinner violated his rights because she "consistently and adamantly denied [P]etitioner's experts, family members, and [Mr. Martinez an opportunity] to attend the [2006] hearing to either say a few words or as observers," and (2) request for relief that the Parole Board would "allow [P]etitioner's experts, family members and [Mr. Martinez] to speak on his behalf at his hearing." *Id.* at 47.

While Petitioner's desire to have his experts, family members and Mr. Martinez making statements in support of Petitioner's release at each of his parole hearings (or being present at all those hearings, either for moral support or as "observers" upon whose recollections Petitioner could rely when challenging unfavorable parole determinations) is certainly understandable, Petitioner has no right to have the entities of his choice to be present at his parole hearings, "either to say a few words or as observers."

■■■ There is no federal constitutional right to parole. *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *accord Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). However, a parole statute may be so drafted to create an expectation of parole release that is entitled to due process protection. *See Green-*

ing one of Petitioner's parole hearings preceding the January 21, 2004, one. *See* April

*holtz,* 442 U.S. at 12, 99 S.Ct. 2100; *accord Allen,* 482 U.S. 369, 107 S.Ct. 2415. The holdings of *Allen* and *Greenholtz* suggest that the mandatory language of the federal Parole Act creates an expectation of parole entitled to some procedural protections. *See, e.g., Gambino v. Morris,* 134 F.3d 156, 170, n. 16 (3d Cir.1998) (citing *Kindred v. Spears,* 894 F.2d 1477, 1481 (5th Cir.1990); *Solomon v. Elsea,* 676 F.2d 282, 285 (7th Cir.1982); *Evans v. Dillahunty,* 662 F.2d 522, 526 (8th Cir.1981), and holding that the Parole Act creates a liberty interest entitled to a certain protection of due process, but that protection cannot exceed that the Supreme Court held applicable to the Nebraska parole statute examined in *Greenholtz* ). Therefore, pursuant to *Greenholtz,* the United States Parole Board meets the due process requirements by providing an inmate with: (1) a notice of the parole eligibility hearing, (2) an opportunity to appear at that hearing and present *statements and letters on his/her own behalf,* plus (3) a statement informing him/her why parole was denied. *See Greenholtz,* 442 U.S. at 14–16, 99 S.Ct. 2100. Nothing in the holding of *Greenholtz* suggests that an inmate has due process right to invite audience and witnesses of his/her choice to his/her parole hearings "either to say a few words or as observers."

Here, it appears undisputed that Petitioner's expert witnesses provided the Parole Board with their reports (and, seemingly, audiotaped oral testimony), and these reports (and testimony) were made part of Petitioner's parole file. Similarly, it appears equally apparent that Petitioner was able to provide the Parole Board with written statements or personal letters

Opinion at 7–11 in *Bivens–V, supra.*

from Mr. Martinez, Petitioner's family and from others, such as representatives of Guyanese Embassy to the United States.[45] While Petitioner believes that he should have been afforded an opportunity to present all these statements in the form of live testimony, the Due Process Clause does not provide him such right. *See Greenholtz*, 442 U.S. at 14–16, 99 S.Ct. 2100. *A fortiori*, there is no constitutional right to an "observing audience" of the inmate's choice during the inmate's parole hearing.

■ Similarly, the applicable regulation does not provide Petitioner with a right to either audience or live testimony of his witnesses of choice. The regulation reads, in pertinent part, as follows:

> There is hereby delegated to hearing examiners the authority necessary to conduct hearings and to make recommendations relative to the grant or denial of parole.... [T]here is also *delegated to hearing examiners the authority* necessary to make a probable cause finding ... and to *determine the witnesses who*

*will attend the hearing,* including the authority to issue subpoenas for witnesses and evidence.

28 C.F.R. § 2.23(a) (emphasis supplied).

Petitioner does not challenge the constitutionality of Section 2.23, either as drafted or as applied. *See generally*, Pet., Supp. Moreover, Petitioner's submission is entirely silent as to the regulation. *See id.* All the Petition states is a blanket allegation that Ms. Pinner, somehow, violated his rights by rightfully exercising her discretion in determining which witnesses would (or would not) attend Petitioner's January 21, 2004, and June 5, 2006, hearings. However, Petitioner's mere allegations and disappointment over Ms. Pinner's decision do not provide a cognizable basis for *habeas* relief.[46] *See, e.g., Coades v. Kane*, 1992 WL 121613, 1992 U.S. Dist. LEXIS 8844 (E.D.Pa. May 22, 1992) (an inmate was not denied due process merely because an unfavorable decision was reached by a prison hearing examiner since an unfavorable decision *per se* is not the same as a denial of due process).

---

**45.** Petitioner's 164–page submission is not entirely clear as to whether Petitioner actually acted upon his opportunities to submit written statements and/or personal letters from *all* entities whom he wished to be present at his hearings. *See generally*, Pet., Supp. It is, however, apparent that Mr. Martinez did testify in person during Petitioner's 2004 parole hearing and Petitioner's counsel, Mr. Greenberg, did submit at least some letters to the Parole Board. *See* Docket Entry No. 1–3, at 15.

**46.** It appears that Petitioner's administrative challenge to Ms. Pinner's decision to exclude live witnesses/audience under 28 C.F.R. § 2.13(b) was dismissed. *See* Docket Entry No. 1–3, at 15. Section 2.13 provides that

> A prisoner may be represented at a hearing by a person of his or her choice. The function of the prisoner's representative shall be to offer a statement at the conclu-

sion of the interview of the prisoner by the examiner, and to provide such additional information as the examiner shall request. Interested parties who oppose parole may select a representative to appear and offer a statement. The hearing examiner shall limit or exclude any irrelevant or repetitious statement.

28 C.F.R. § 2.13(b).

In response to Petitioner's administrative challenge, the Parole Commission explained to Petitioner that Section 2.13(b)'s reference to a representative does not imply that the inmate has the right to invite live witnesses or audience; rather it refers to a person who, at the inmate's request, would represent the inmate at the hearing. In fact, pursuant to Section 2.13(b), Petitioner was represented by his counsel, Mr. Greenberg. *See* Docket Entry No. 1–3, at 15. Petitioner's instant submission and supplementation contain no allegations under 28 C.F.R. § 2.13(b) and do not mention the regulation.

### c. *Examiner's Bias*

Petitioner's statements made part of the "Conclusion" and "Relief Sought" sections of the Petition read as follows:

As Examiner Pinner denied [P]etitioner [parole] at the 2004 hearing where her decision was pre-made, she should not have presided at the 2006 hearing in which she relied on her previous decision of 2004.... Examiner Pinner [should] be recused from hearing [Petitioner's parole] as she is biased, prejudiced, and has pre-decided the case as is clear from her 2004 and 2006 decisions [to recommend the Commission to deny Petitioner parole].

Pet. at 47.

In support of his conclusion and request for relief, Petitioner asserts that Ms. Pinner's bias follows from the following facts:

On January 21, 2004, [P]etitioner appeared before [Examiner] Pinner [for a parole hearing], in which she used the false, inaccurate, and misleading [BOP] report, ignoring [P]etitioner's exemplary prison record, the numerous recommendations from prison staff ... and denied [Petitioner parole] without foundation.... It is a clear showing that Examiner Pinner's decision was already reached to deny parole, because at the hearing she was hostile [and] belligerent.... Examiner Pinner used the [BOP] report [containing mixed favorable and unfavorable medical opinions] to deny parole, [and] the argument [contained in] Dr. Schwartz'[ ] report was completely ignored [even though that report] clearly contradicted the [unfavorable medical opinions in the BOP] report.... While [P]etitioner was sched-

uled for another parole hearing in ... 2006, ... Case Manager Ferretti ... informed [P]etitioner that Pinner had already decided to deny [Petitioner] parole [since Ferretti stated to Petitioner,] "She's not giving you parole," [which is] a showing a decision was already reached.... [O]n Monday, June 5, 2006, ... Examiner Pinner ... once again ... failed to review the records or take anything in consideration as [her] decision was already reached, and the obstruction of [P]etitioner's parole representatives have consistently been obstructed and up to this present time [sic.].... On June 5, 2006, Examiner Pinner disregarded Dr. Hilkey's report and once again used [the BOP] report to deny parole. Examiner Pinner's decision [must have been] made prior to the hearing, [since Petitioner found her to be] completely close-minded to any presentation.... Although Examiner Pinner indicated [that] she [was not] a psychologist, expert testimony/reports [of Drs.] Schwartz and Hilkey fell on deaf ear, a clear showing [of] what boilerplate hearings [P]etitioner was confronted with: bias, prejudice, close-minded through a systematically deaf agency, using false, inaccurate, and misleading [BOP] report to deny parole.... In fact, none of the arguments or recommendations made by [Drs.] Schwartz and Hilkey ... were fit to overcome the [BOP] report, according to Examiner Pinner [who] denied parole.

Pet. at 33–35, 37–39.[47]

Read together, Petitioner's conclusion, request for relief and supporting facts indicate that Petitioner deduces Ms. Pinner's bias from the facts that she denied parole,

---

**47.** As an additional fact supporting his allegations as to Ms. Pinner's bias, Petitioner asserts that Ms. Pinner, presiding over parole proceedings of inmates Coles and an unnamed inmate, found that: (a) parole of Mr. Coles was appropriate in 2006, even though "Coles['] release date was 2020," and (b) parole of the unnamed inmate was appropriate in 2007, even though that "other prisoner's release [date] was [in] 2013." Pet. at 39, n. 7.

she exercised her discretion as to the attending witnesses, and her statement of the grounds upon which parole was denied elaborated on the matters other than Drs. Schwartz and Hilkey's conclusions. *See id.* Indeed, it appears that Petitioner is of the impression that the unfavorable information in the BOP report was the sole basis for denial of Petitioner's release on parole.[48] *See id.*

■ Petitioner's allegations do not state a claim meriting *habeas* relief. A "fair trial in a fair tribunal is a basic requirement of due process.... This applies to administrative agencies which adjudicate as well as to courts." *Withrow v. Larkin,* 421 U.S. 35, 46, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (citations omitted) (combination of investigative and adjudicative functions does not necessarily show a biased decision-maker); *see also Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (due process requires neutral and detached decision-maker for parole revocation hearing). However, "[t]o sustain a claim of [decision-maker's misconduct], there must be an extremely high level of interference by the [decision-maker] which creates a pervasive climate of partiality and unfairness." *Duckett v. Godinez,* 67 F.3d 734, 740 (9th Cir.1995) (internal quotations and citation omitted). To obtain habeas corpus relief on a challenge based on tribunal's misconduct, the petitioner must show actual bias, *i.e.,* that the decision-maker treated him unfairly. *See Johnston v. Love,* 940 F.Supp. 738, 774 (E.D.Pa.1996), *aff'd,* 118 F.3d 1576 (3d Cir.1996), *cert. denied,* 522 U.S. 972, 118 S.Ct. 425, 139 L.Ed.2d 326 (1997). In contrast, the petitioner's mere impressions or the mere appearance of bias does not establish bias. *See id.; see also Withrow v. Larkin,* 421 U.S. at 47, 95 S.Ct. 1456. Furthermore, an adverse ruling is not sufficient for the petitioner to make out a claim of the decision-maker's bias. *See United States v. Gallagher,* 576 F.2d 1028, 1039 (3d Cir.1978).

Here, Petitioner deduces Ms. Pinner's bias from the fact that she was, in his opinion, "hostile [and] belligerent" during his parole hearing. However, her scowling or aggressive style of communication does

---

**48.** The Court notes, in passing, that Petitioner's *Bivens–II, Bivens–IV* and *Bivens–VII* actions, as well as his *Mandamus–II* action, indicate a long line of Petitioner's frictions with correctional officials whom Petitioner denies as "slimy-lying" and "blood-sucking" employees of "the BOP [which] maintained its statu[r]e as the dumping ground for unemployable and an incubator for breeding corruption and nepotism [with] an on-going culture of systemic lies." *Bivens–VII,* Docket Entry No. 1, at 41. Therefore, it is plausible that Ms. Pinner based, at least in part, her decision to deny Petitioner parole on the basis Petitioner's prison file reflecting these frictions.

The Parole Commission has broad discretion to review materials helpful in determining whether to release a prisoner on parole. [*See*] *U.S. ex rel. Goldberg v. Warden, Allenwood Fed. Prison Camp,* 622 F.2d 60, 63 (3d Cir.1980); *see also ... Melvin v. Petrovsky,* 720 F.2d 9, 10 (8th Cir.1983)

(finding Parole Commission not limited to indictment and conviction in determining severity of offense and can consider other reliable information, including presentence report). Indeed, Congress has even authorized the Commission to view [the] reports [the Commission deems relevant] "despite the knowledge that 'there are no formal limitations on their contents and they may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged.'" *Id.* at 64 (citing *Gregg v. United States,* 394 U.S. 489, 492, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969)).

*Furnari,* 125 Fed.Appx. at 437. However, this Court assesses the allegations made in Petitioner's complaint under the presumption that Petitioner is correct in his belief that Ms. Pinner's determination was based solely on the unfavorable information contained in the BOP report.

not mean that Petitioner's parole hearings were infested with "a pervasive climate of partiality and unfairness" requiring *habeas* relief. *See Duckett v. Godinez,* 67 F.3d at 740.

Alternatively, Petitioner asserts that Ms. Pinner was biased because her statements as to the basis for denial of Petitioner's parole elaborated on the matters other that the favorable-to-Petitioner conclusions reached by Drs. Schwartz and Hilkey. However, in the event the Parole Commission denies parole, it does not have to elaborate on every piece of evidence it considers; rather the Commission is obligated to state its reasons for denying parole. *See* S.Rep. No. 94–369, 94th Cong., 2d Sess. 24–25 (1975), *reprinted in* U.S.Code Cong. & Admin.News at pp. 335, 346–47 (1976) (listing the information that needs to be included in a Notice of Action, none of which includes a mandatory discussion of every given report or other piece of evidence provided by the inmate or his experts to the Parole Board). As long as the Notice of Action provides the inmate with "an understandable explanation of his parole status," such Notice is proper and cannot be deemed evidence of the parole board's prejudice. *See Shahid v. Crawford,* 599 F.2d 666, 671–72 (5th Cir.1979); *see also Furnari,* 531 F.3d at 252 (observing that, pursuant to 18 U.S.C. § 4203, "Congress has given the Parole Commission great discretion concerning matters of parole," and the Parole Commission may grant or deny release on parole, so long as it has good cause for doing so and it furnishes the prisoner with written notice stating the reasons for its determination).[49]

Here, Petitioner asserts that Ms. Pinner duly notified him of his parole status, although the notification created in Petitioner the impression that Ms. Pinner's lack of elaboration on Drs. Schwarts and Hilkey's conclusions was indicative of her being "close-minded." However, "close-minded-

---

**49.** The *Furnari* court relied, in part, on the language of 18 U.S.C. § 4206(c) (directing the Parole Commission to furnish prisoners with a written notice stating the reasons for denial of parole with particularity), a provision included in the Parole Commission and Reorganization Act of 1976 repealed and replaced by the Sentencing Reform Act of 1984 effective November 1, 1987. *See* Pub.L. No. 98–473, §§ 212, 218, 98 Stat. 1987, 2027. Consequently, it is unclear whether the obligation to provide a notice stating the reason for denial of parole "with particularity" remains at force. However, it appears sufficiently certain that the federal parole scheme entails due process obligations delineated in *Greenholtz. See Gambino v. Morris,* 134 F.3d at 170 n. 16 (relying on *Kindred v. Spears,* 894 F.2d 1477, 1481 (5th Cir.1990); *Solomon v. Elsea,* 676 F.2d 282, 285 (7th Cir.1982); *Evans v. Dillahunty,* 662 F.2d 522, 526 (8th Cir.1981)). The Supreme Court in *Greenholtz* opined that, "when parole is denied, [the parole board must] inform[ ] the inmate in what respects he falls short of qualifying for parole," *i.e.,* address the facts upon which parole was denied. *Greenholtz,* 442 U.S. at 16, 99 S.Ct.

2100; *accord Lynch v. United States Parole Com.,* 768 F.2d 491, 497 (2d Cir.1985) (utilizing the "sufficient statement of reasons" standard rather than the "with particularity" one and relying on *Reynolds v. McCall,* 701 F.2d 810, 814 (9th Cir.1983); *Shahid,* 599 F.2d at 671–72; and *Garcia v. United States Board of Parole,* 557 F.2d 100, 105 (7th Cir.1977)). Here, the Parole Board provided Petitioner with more than sufficient statements with regard to his 2004 and 2006 hearings. Moreover, even if this Court were to hypothesize that the currently operable standard requires a written notice stating the reasons for denial of parole "with particularity," the statements provided to Petitioner with regard to his 2004 and 2006 hearings met that standard, since the particularity requirement cannot be construed as an obligation to elaborate on every piece of evidence provided by the inmate. *Cf. Globis Capital Partners, L.P. v. Stonepath Group, Inc.,* 241 Fed.Appx. 832, 835 (3d Cir. 2007) (defining the term "[a] state[ment] with particularity" as a statement of facts supporting the conclusions rather than an obligation to address every potentially adverse piece of evidence).

ness" is not the same as partiality, and Ms. Pinner's refusal to embrace Drs. Schwartz and Hilkey's conclusions, as well as her failure to elaborate on the issue why she remained unpersuaded by these conclusions, does not signify that Ms. Pinner was biased against Petitioner.[50] Petitioner makes no allegation that Ms. Pinner's determination was based on information other than in his parole hearing and file; the fact that a tribunal developed an unfavorable view of evidence cannot be labeled as unfair prejudice. *Accord Furnari*, 531 F.3d at 253–54 (finding that, a federal court "cannot overturn the Parole Commission's credibility determination if there is a basis for its decision [even if the petitioner] asserts that the Parole Commission improperly discredited [a document stating facts] that support his position [*i.e.*, that he should be released on parole,] while assigning too much credit to adverse information").

Finally, the fact that Ms. Pinner twice declined to recommend Petitioner's release on parole is not a sign of bias. As this Court has already explained to Petitioner in this case:[51]

> In making [recusal] determination, the court must consider how the facts would appear to a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *U.S. v. Jordan*, 49 F.3d 152, 156 (5th Cir.1995); *accord Clemens v. United States District Court for the Central District of California*, 428 F.3d

1175, 1178 (9th Cir.2005); *Matter of Mason*, 916 F.2d 384, 386 (7th Cir.1990). Generally, "beliefs or opinions which merit recusal must involve an extrajudicial factor." *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 167 (3d Cir.2004) (internal quotation marks and citation omitted). Absent the existence of such an extrajudicial factor, the record must evince a "deep-seated favoritism or antagonism on the part of the [tribunal] that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). By contrast, the Supreme Court has made it clear that "[adverse] rulings alone almost never constitute a valid basis" for recusal. *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147. The reason for this rule is that [adverse] decisions "in and of themselves can only in the rarest of circumstances evidence the degree of favoritism or antagonism required" to prove bias. *Id.* Consequently, [the tribunal's] prior adverse ruling cannot alone show the bias necessary for disqualification under 28 U.S.C. § 455(a). *See, e.g., Byrne v. Nezhat*, 261 F.3d 1075, 1103 (11th Cir.2001); *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir.2000); *Leslie v. Grupo ICA*, 198 F.3d 1152, 1160 (9th Cir.1999); *United States v. Arena*, 180 F.3d 380, 398 (2d Cir.1999); *Matter of Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir.1993). This is true even if the [tribunal] consistently made adverse rulings against the party,

---

**50.** Moreover, Ms. Pinner's proper exercise of her discretion in determining which witnesses may testify at Petitioner's hearings, *e.g.*, her decision to hear Mr. Martinez' testimony only once (during Petitioner's 2004 hearing) and not have it reiterated (during the 2006 hearing), is not indicative of bias. Finally, Petitioner's conclusion that Ms. Pinner turned a "deaf ear" to the reports of Drs. Schwartz and Hilkey does not show that Mr. Pinner failed to consider all information submitted.

*See* Docket Entry No. 1–3, at 15 (expressly stating that the decisions reached were made after consideration of "all the information [Petitioner] submitted on [his] behalf, both new and old").

**51.** Petitioner sought this Court's recusal on the grounds that this Court dismissed Petitioner's *Bivens–IV* and *Bivens–V* complaints. *See* Docket Entry No. 2.

see *McCalden v. California Library Assoc.*, 955 F.2d 1214, 1224 (9th Cir.1990); *United States v. Mobile Materials, Inc.*, 881 F.2d 866, 877 (10th Cir.1989), because an adverse decision, even if it is adverse on all issues raised, is not evidence of bias, especially when it is supported by … facts. *See Crenshaw v. Hodgson*, 24 Fed.Appx. 619, 621 (7th Cir.2001) (citing *Gleason v. Welborn*, 42 F.3d 1107, 1112 (7th Cir.1994); *Byrne*, 261 F.3d at 1103).… Petitioner's dissatisfaction [with the outcome of his application] does not provide a proper basis for [a tribunal's] recusal, *see Bolick v. Pennsylvania*, 2005 WL 3234630, *2, 2005 U.S. Dist. LEXIS 30140, *2 (E.D.Pa. Nov. 30, 2005) ("[the tribunal] cannot be disqualified … merely because [the affected party] disagrees with his decision"); *see also Securacomm Consulting v. Securacom Inc.*, 224 F.3d 273, 278 (3d Cir.2000) (holding that a "party's displeasure with [adverse] rulings does not form an adequate basis for recusal"); *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1356 (3d Cir.1990) ("Disagreement with [the tribunal's] determinations certainly cannot be equated with the showing required to so reflect on his impartiality as to dictate recusal").…

Docket Entry No. 5, at 3–5 (original brackets omitted).

■■■■ Hence, the fact that Ms. Pinner twice denied Petitioner release on parole cannot be, in and of itself, indicative of her bias, especially in light of Petitioner's concession that the information in the BOP report relied upon by Ms. Pinner did provide her with a valid basis for denial of his parole. Since Petitioner's allegations present nothing but Petitioner's displeasure with Ms. Pinner's findings, these allegations provide this Court with no basis for concluding that Ms. Pinner was biased against him. Therefore, these allegations do not merit *habeas* relief.

### C. *Habeas-like Claims*

Although Petitioner's Petition and Supplement do not expressly seek *habeas* relief, this Court cannot ignore the facts that: (1) the chapter following Petitioner's tenth narrative is titled "Case citation supporting Petitioner's immediate release" and ends up with the line that Petitioner "should be considered for immediate parole"; and (2) both sub-parts of his Supplement seek *vacatur* of the Parole Board's "decision denying [P]etitioner parole." *See* Pet. at 33–35, Supp. at 6–7. Since these statements suggest that Petitioner is challenging the outcome of a certain unspecified parole hearing (or outcomes of all his parole hearings), the legal claims implied in these statements fall within the "core" of *habeas* action and, if meritorious, provide proper jurisdictional basis for *habeas* relief.[52] Consequently, this Court construes the statements contained in the Supplement and the "citation" chapter of the Petition, here, in *2241–III*, as a § 2241 application ("2241–Part").

Unfortunately, Petitioner's application does not comply with the Habeas Rule obligating the litigant to "to specify all the grounds for relief, state the facts supporting each ground," and to prepare a "petition [which] substantially follow[s] either the [pre-printed *habeas* petition] form [distributed by the Clerk] or a form

---

52. In a sense, these claims provide a *habeas* counterpart to Petitioner's *Bivens*-like allegations seeking a curative parole hearing on the grounds that Ms. Pinner was, allegedly, biased in her decision, since these *habeas*-like claims imply that she (or any other parole officer presiding over Petitioner's parole hearing) made a parole finding that was constitutionally defective.

prescribed by a local district-court rule". *See* 28 U.S.C. § 2254 Rule 2(c). The Court, therefore, is left with the task of deducing the gist of Petitioner's claims [53] from the language of the 2241–Part, which is effectively a discussion of various legal precedents that Petitioner interprets as favorable to his cause. The import of Petitioner's reference to these cases appears to be that, under the holdings of these cases, he should have been released on parole because: (a) reports of Drs. Scwartz and Hilkey favor parole; (b) Petitioner's institutional achievements present Petitioner in a favorable light, and (c) parts of the BOP report are also favorable to Petitioner. *See* Pet. at 43–45. In other words, Petitioner urges this Court to rule that, under the precedents he cited, the Parole Board's reliance on the BOP report should be deemed "vindictive," the BOP report itself should be deemed "subjective," and "the arguments or recommendations made by [Drs.] Schwartz and Hilkey, as well as [Mr. Martinez' opinion and Petitioner's institutional achievements, should be deemed] fit to overcome the [negative aspects of the BOP] report." [54] *Id.* at 39, 44; Supp. at 2–7.

Since Petitioner relies on a string of legal precedents, the Court finds it helpful to include in this last part of the Court's discussion brief summaries of the facts and holdings of these cases.

The chapter following Petitioner's tenth narrative and titled "Case citation supporting Petitioner's immediate release" discusses two cases, *Mickens–Thomas v. Vaughn,* 355 F.3d 294 (3d Cir.2004), and *Gambino v. Morris,* 134 F.3d 156 (3d Cir. 1998). In addition, Petitioner's Supplement cites *Wasman v. United States,* 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984); *Pearce v. United States,* 396 U.S. 934, 90 S.Ct. 274, 24 L.Ed.2d 232 (1969); *Bono v. Benov,* 197 F.3d 409 (9th Cir. 1999); *Marshall v. Lansing,* 839 F.2d 933 (3d Cir.1988); *Solomon v. Elsea,* 676 F.2d 282 (7th Cir.1982); *Misasi v. United States Parole Com.,* 835 F.2d 754 (10th Cir.1987); *Dye v. United States Parole Com.,* 558 F.2d 1376 (10th Cir.1977); *Billiteri v. United States Board of Parole,* 541 F.2d 938, 944 (2d Cir.1976); and *Persico v. United States Dept. of Justice,* 426 F.Supp. 1013, 1019 (E.D.Ill.1977).

### 1. *Mickens–Thomas*

In *Mickens–Thomas,* the petitioner, who had served forty years in prison and was 75 years old, had been convicted in a second trial in 1969 of first-degree murder

---

**53.** Since Petitioner did not specify the outcome of which particular parole hearing (out of his five hearings) Petitioner is now challenging, *see generally,* Pet., Supp., this Court is not in the position to deduce Petitioner's intent as to this issue. The only conclusion the Court can safely reach is that Petitioner is not re-challenging the outcome of the parole hearing examined by Judge Rodriguez in the *2241–II* action (since such re-challenge would present a successive petition).

**54.** It appears that the unspecified parole hearing(s) Petitioner challenges is/are statutory interim parole hearing(s) conducted pursuant to 18 U.S.C. § 4208(h) and corresponding regulation 28 C.F.R. § 2.14, which explains

that "[t]he purpose of an interim hearing required by 18 U.S.C. § 4208(h) shall be to consider any significant developments or changes in the prisoner's status that may have occurred subsequent to the initial hearing." In light of this regulatory language, Petitioner's allegations appear to suggest that preparation of medical reports by Drs. Schwartz and Hilkey, the entry of a favorable opinion by Mr. Martinez and Petitioner's completion of certain institutional programs amount to such a significant development or change in Petitioner's status as to warrant change in the date of his anticipated parole reconsideration hearing.

and denied parole on four occasions.[55] When the parole board was forced to defend its decision as to the fourth parole hearing, the parole board cited, for the first time, the petitioner's pre-incarceration history of alcohol abuse, his non-admission of guilt and his failure to complete part of the sex offender therapy. The Court of Appeals granted the petitioner *habeas* relief directing his parole in light of the fact that the parole board's decision retroactively applied a new suitability-for-parole standard, which: (a) was specifically effective only prospectively; and (b) emphasized, as the "foremost," the parole board's concern for the protection of the public (unlike the previous standard applicable to the petitioner, which balanced the inmate's rehabilitation and liberty interest with the interest of public safety). *See Mickens–Thomas*, 355 F.3d 294.

Petitioner reads the language of *Mickens–Thomas* discussing the difference in pre– and post–1996 Pennsylvania parole-suitability standards as the Court of Appeals' umbrella finding that *any* parole board has to apply pre–1996 Pennsylvania parole-suitability standard to *any* inmate. *See* Pet. at 44–45. However, the holding of *Mickens–Thomas* implies nothing of the kind. *See Mickens–Thomas*, 355 F.3d 294. Moreover, since Petitioner does not assert that the federal parole-suitability standard applied to him at any or all his parole hearings differed from that in operation at the time of his offense, the decision of the Court of Appeals in *Mickens–Thomas* is wholly inapposite to this case.

## 2. *Gambino v. Morris*

In *Gambino,* a prisoner was denied parole because the United States Parole Commission concluded that he was affiliated with an organized crime family. The district court denied the prisoner's petition for a writ of *habeas corpus.* On appeal, the Court of Appeals directed the Commission to conduct another hearing, holding that the Commission abused its discretion because it deduced a link between the prisoner and organized crime from: (a) such attenuated facts as the prisoner's marriage to the member of a family of someone who was suspected to be a member of organized crime; (b) a homicide investigation unrelated to the prisoner; (c) a police report that was not actually presented to the Commission; and (d) an informant's report, the truthfulness of which the prisoner was not allowed to challenge during his hearing. *See Gambino v. Morris,* 134 F.3d 156.

Neither the facts nor the holding of *Gambino* have any bearing on the case at bar. Here, Petitioner asserts that he was not released on parole because of the Parole Board's reliance on the BOP report, but concedes that the BOP report is an actual medical evaluation that was both presented to the Parole Board and extensively challenged by Petitioner. Hence, the holding of *Gambino, i.e.,* that the Commission cannot rely on attenuated conjecture or on documents, the content of which it did not examine or did not allow the inmate to challenge, is wholly inapposite to the case at hand.

[Petitioner] attempts to analogize his case to *Gambino* in which [the Court of

---

**55.** In an action preceding *Mickens–Thomas v. Vaughn,* 355 F.3d 294, the district court found that, with respect to the petitioner's first three parole applications, the parole board actually did violate the constitutional prohibition against *ex post facto* laws. *See Mickens–Thomas v. Vaughn,* 217 F.Supp.2d 570 (E.D.Pa.), *aff'd* 321 F.3d 374 (3d Cir. 2003). The district court, therefore, granted the petitioner conditional parole and remanded the matter to the parole board for the fourth hearing. The decision of that fourth hearing was the basis of *Mickens–Thomas v. Vaughn,* 355 F.3d 294, ruling.

Appeals] found that the Parole Commission's denial of parole was "arbitrary and capricious" and thus remanded the case for reconsideration. But this case is distinguishable from *Gambino* because, [in *Gambino,* the Court of Appeals'] conclusions [were based] on the fact that the Parole Commission relied on information from unnamed sources, a procedure that deprived the prisoner of the opportunity to rebut the information.... Moreover, in *Gambino* [,] the Parole Commission relied on facts previously found to be erroneous without [any] information to suggest otherwise. [Here], however, there is considerable information supplying good cause for the Parole Commission's decision. [While Petitioner] is disappointed by the limited weight and credibility that the Parole ... Board afforded the [reports favorable to Petitioner's aspiration to be released on parole], it is apparent it had a factual basis for its determination. The reports from the Board are thorough and reasonable.

*Furnari,* 531 F.3d at 254.

### 3. *Wasman, Pearce, Bono* and *Marshall* Cases

Petitioner cites to *Wasman,* 468 U.S. 559, 104 S.Ct. 3217, *Pearce,* 396 U.S. 934, 90 S.Ct. 274, *Bono,* 197 F.3d 409, and *Marshall,* 839 F.2d 933, in support of his assertion that the Parole Board's reliance on the BOP report should be deemed "vindictive," and the burden should be shifted to the Parole Board, so it would prove that the BOP report itself is objective. *See* Supp. at 6–7. However, the cases cited by Petitioner offer no support to his conclusion.

In *Marshall,* a petitioner sought *habeas corpus* relief, asserting that the United States Parole Commission had improperly applied parole release guidelines to his term of imprisonment. After the district court granted petitioner a writ, the Commission appealed, contending that the district court was not authorized to demand an explanation concerning the Commission's reasons for the release guidelines it had imposed upon petitioner. The Court of Appeals rejected the Commission's argument, finding that the district court was authorized to demand a statement of reasons evident from the petitioner's record (rather than conclusory statements), because the relevant statute required the Commission to provide a meaningful statement of reasons for its parole decisions, and because the petitioner was entitled to insure he was held in compliance with applicable regulations. Analogizing the actions of the Commission with an imposition of a higher sentence on a defendant who succeeded, in part, in his criminal appeal, the *Marshall* court explained that,

due process forb[ids] the imposition of a tougher sentence than the defendant had received after his first trial, whenever the increased penalty was in retaliation for the successful appeal. [*See*] *Pearce,* 395 U.S. at 723–25, 89 S.Ct. 2072. [In *Pearce,*] the Court held that the mere "threat inherent in the existence of such a punitive policy" would serve to chill appeals by other prisoners, *id.* at 724, 89 S.Ct. 2072 (citation omitted), and therefore that "due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.* at 725, 89 S.Ct. 2072 (footnotes omitted). To that end, recognizing the difficulty of proving the existence of a retaliatory motivation in any individual case, *see id.* at 725 n. 20, 89 S.Ct. 2072, the Court held that

whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those

reasons must be based upon objective information concerning identifiable conduct on the part of the defendant *occurring after the time of the original sentencing proceeding.*

*Id.* at 726, 89 S.Ct. 2072 (emphasis added). Where such reasons do not affirmatively appear, a federal court may void the harsher sentence and grant *habeas corpus* relief. [*See*] *id.* Later cases have explained that the imposition of a harsher sentence upon reconviction creates a "presumption of vindictiveness" on the part of the sentencer, which can only be overcome by an on-the-record explanation. [*See*] *Wasman v. United States*, 468 U.S. 559, 565, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984) (quoting *United States v. Goodwin*, 457 U.S. 368, 374, 102 S.Ct. 2485, 73 L.Ed.2d 74(1982)).

*Marshall*, 839 F.2d at 947. Effectively, the *Marshall* court's "presumption of vindictiveness" articulated a *habeas* counterpart to a *Bivens* First Amendment retaliation cause of action for the claims asserting a *harsher re-sentencing* in the nature of a *de facto* "trial tax" lacking any on-the-record explanation.

Petitioner, however, reads this language as suggesting that a "presumption of vindictiveness" should be applied to his parole proceedings because Petitioner "has previously filed *habeas corpus* actions and numerous complaints concerning the abuse of

discretion by the [Parole Board]." Supp. at 6. Petitioner's reading of the *Marshall* language, as well as the cases upon which the *Marshall* court relied, *i.e.*, *Wasman* and *Pearce*, is unwarranted. The Parole Board's decisions did not impose a *harsher* "re-sentencing;" it just did not allow Petitioner a more lenient one. Moreover, Petitioner's previous *habeas* and *Bivens* claims were all dismissed on the merits, hence eliminating the "vindictiveness" aspect. Finally, since Petitioner asserts that the Parole Board's decisions to deny him release were based on the BOP report, which is undisputably made part of Petitioner's record, the holding of *Marshall* and the cases relied upon by the *Marshall* court are wholly inapposite to Petitioner's situation.[56]

### 4. *Solomon, Misasi, Dye, Billiteri* and *Persico* Cases

In *Solomon*, an inmate alleged that his release on parole was denied without good cause, that it ensued from the parole board's reliance on factually incorrect information and its failure to consider positive information about the inmate, and that the notice of the decision was a mere "pro forma recitation" verifying the inmate's allegations.[57] After the inmate appealed the district court denial of *habeas* relief, the Court of Appeals for the Seventh Circuit

**56.** In *Bono v. Benov*, 197 F.3d 409, the Ninth Circuit expressly followed the Court of Appeals for the Third Circuit's *Marshall* decision and employed the test articulated in *Marshall*, while clarifying that the holding of *Marshall* is inapplicable to harsher re-sentencing by a jury, but a parole board's decision is more similar to a bench ruling than to a jury finding. Consequently, the *Bono* court applied a presumption of vindictiveness to a parole board's decision which *changed its original ruling* and extended the petitioner's presumptive parole date by 12 years after the petition-

er had two *successful* habeas petitions. Here, Petitioner had no successful previous petitions, and the original determination of the Parole Board remained unchanged.

**57.** Asserting the incorrectness-of-information aspect, the petitioner in *Solomon* stated that the parole board unduly relied on his presentence reports, which—he believed—overemphasized his involvement in the smuggling conspiracy serving as a basis for his conviction. *See Solomon v. Elsea*, 676 F.2d at 287–88 and n. 10.

affirmed the district court's decision, explaining:

> The accepted standard of review of parole determinations is whether the decision constitutes an abuse of discretion. The authority to review Parole Commission decisions is thus limited. Congress has given the Parole Commission the sole power to grant or deny parole in the exercise of its discretion. [*See* ] *Billiteri v. United States Board of Parole,* 541 F.2d 938, 944 (2d Cir.1976); [*see also*] *Persico v. United States Dept. of Justice,* 426 F.Supp. 1013, 1019 (E.D.Ill. 1977), *aff'd,* 582 F.2d 1286 (7th Cir.1978). Courts have the authority to review decisions by the Commission which show an abuse of discretion. . . .

*Solomon v. Elsea,* 676 F.2d at 290.

The *Solomon* court further clarified that, while

> [the inmate] urges this Court to adopt a "sufficiency of the evidence" standard of review . . . , this standard exceeds that envisaged by Congress. We choose to retain the traditional standard of review. A court of review need only determine whether the information relied on by the Commission is sufficient to provide a factual basis for its reasons. *The inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions* . . . . [*See* ] *McArthur v. United States Board of Parole,* 434 F.Supp. 163, 166 (S.D.Ind.

1976), *aff'd,* 559 F.2d 1226 (7th Cir. 1977), *quoting Zannino v. Arnold,* 531 F.2d 687, 691 (3d Cir.1976). It is this standard of review which we must use to evaluate the [inmate's] contentions. . . . Although it is true that certain factors exist which are favorable to [the inmate], they are only factors for the Commission to consider. . . . Because a rational basis exists in the record to support the Commission's conclusions, the decision of the Parole Commission must not be disturbed. There has been no abuse of discretion by the Parole Commission.[58]

*Id.* at 290–91 (emphasis supplied).

Here, Petitioner reads the first excerpt from the *Solomon* opinion but entirely ignores the second. *See* Supp. at 1–2. He urges the Court to find that the Parole Board abused its discretion by not finding that the opinions of Drs. Schwartz and Hilkey, and the statements of Mr. Martinez, outweighed the negative conclusions contained in the BOP report. *See id.* However, the Parole Board was not required to do so under the *Solomon* standard; to the contrary, Petitioner himself makes the case for the Parole Board, under the *Solomon* standard, when he asserts that the Parole Board relied on the BOP report; such reliance itself provided the required rational basis for the Board's denial of parole decision. *See Solomon,* 676 F.2d at 290–91. Consequently, Petitioner's citations to *Solomon, Misasi* and *Dye* advocate against, rather than in favor

---

**58.** This conclusion was expressly adopted by the *Misasi* and *Dye* courts. *See Misasi v. United States Parole Com.,* 835 F.2d at 758 (quoting the *Solomon* holding that "[t]he inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions"); *Dye v. United States Parole Com.,* 558 F.2d at 1378 ("it is not the function of courts to review the Board's discretion in denying parole or to repass on the credibility of reports received by the Board in making its determination").

of, granting him *habeas* relief.[59]

This Court, therefore, finds that the 2241–Part of the Petition and Supplement, which contains Petitioner's *habeas*-like challenge with respect to his unspecified parole hearing(s), does not merit *habeas* relief. Moreover, the exhibits submitted by Petitioner indicate that he was denied parole in 2004 and 2006 on the basis of evidence well supporting the Parole Board's decision under the standard articulated in *Solomon* and its progeny, as well as under 28 C.F.R. § 2.19(c).[60] Finally,

**59.** Petitioner also contends that the Parole Board violated its rule requiring it to resolve prisoner disputes concerning the accuracy of the information presented to it by a "preponderance of the evidence standard." *See* Supp. at 2–3 (citing 28 C.F.R. § 2.19(c)). Under this regulation, if the prisoner disputes the accuracy of the information presented, "the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability." *Id.* Petitioner reads this language as offsetting that of the *Solomon* holding and asserts that the regulatory utilization of the phrases "preponderance of the evidence" and "reason and probability" mandates a finding that medical conclusions reached by Drs. Schwartz and Hilkey outweigh those contained in the BOP report (prepared by Drs. Pugh and Berry) because: (a) Dr. Berry was serving her internship at the time when she prepared the BOP report, and (b) Drs. Schwartz and Hilkey had more extensive medical experience. However, a federal court cannot make a ruling as to which medical opinion is more "weighty." Moreover, even if this Court were empowered to make such medical finding, it would have no impact on the outcome of this case, since the preponderance standard articulated in 28 C.F.R. § 2.19(c), the same as the standard articulated in *Solomon*, allows the Parole Board to weigh all plausible inferences that the Board could draw from evidence in the record. *See U.S. ex rel. Farese v. Luther*, 953 F.2d 49, 53 (3d Cir.1992). Here, the Parole Board's reasonable inferences from the negative aspects contained in the BOP report could provide the necessary "reason and probability" to validate a preponderance of evidence finding that Petitioner should not be released on parole. *See id.* Any finding otherwise would create an anomalous situation where the Commission would be automatically stripped of its discretion every time an inmate retains more expert witnesses (or expert witnesses with lengthier work experi-ence) than the Commission: the 28 C.F.R. § 2.19(c) preponderance standard does not envision either a battle of experts or a competition as to who would retain more experts. The weight to be ascribed to the opinions of expert reports lies within the province of the Commission.

**60.** Petitioner contends that his release on parole was invariably denied solely because of one reason: the negative assessments contained in the BOP report. However, contrary to Petitioner's contention, the 2004 and 2006 denial-of-parole decisions were based on a *multitude* of reasons (only one of which was the Parole Board's reliance on the BOP report), and these reasons were extensively detailed to Petitioner in the BOP's Notices of Action. *See* Docket Entry No. 1–3, at 15–16, 23. Petitioner, however, either consciously ignores or misreads these reasons, and maintains that he has been denied release on parole solely because of the negative statements contained in the BOP report. For instance, he wholly ignores the rationale of the following Commission statement:

> You claim that the crime you committed ... (contracting for the murder of a woman who spurned your romantic advances) was "out of character," which allegedly removes any danger that you would commit a similar crime in the future. However, you submit no new information that would support that claim. The Commission cannot accept your contention that this crime was "out of character" merely because of your general good behavior while serving your sentence.... The facts remain that you committed the crime, not on impulse, but with predetermination and planning, and that you subsequently attempted to escape responsibility for it.... In the case of a crime "out of character," the Commission would expect to see unusual external circumstances leading up to the crime, and a rapid expression of remorse and acceptance of responsibility from the offender once it was over. Such elements are completely absent in your case.

the decision of the Parole Board examined by Judge Rodriguez in *Bivens–II* cannot be revisited by this Court in light of the prohibition against second and successive petitions.[61] Consequently, as drafted, Petitioner's application will be dismissed for failure to assert that he is in confinement in violation of the United States constitution or federal laws.

However, since Petitioner asserts that he had five parole hearings,[62] this statement indicates that there could be up to two parole hearings with respect to which: (1) this Court might presume (on the basis of Petitioner's opinion that the BOP report was the invariable sole reason for denial of his release on parole) that the Parole Board's substantive decision was proper; but (2) cannot presume that Petitioner was duly notified of the reasons for the Parole Board's decision (since Petitioner's submission, exhibits included, does not shed light on this issue).

Consequently, this Court, while dismissing Petitioner's submission as drafted, will retain temporary jurisdiction over this matter in order to allow Petitioner to submit a "re-amended" petition in the event he desires to challenge *procedural sufficiency* of notices of action he received after either one of these two unspecified hearings.[63] *See Furnari v. Warden, Allenwood Fed. Correctional Inst.,* 218 F.3d 250 (3d

Cir.2000) (parole board abused its discretion by failing to follow its regulation requiring a statement of reasons for denying the parole).

In the event Petitioner elects to file a "re-amended" Petition, he is expressly reminded that: (a) under Habeas Rule 2(e), he should state his challenges to one specific parole hearing (rather than to numerous hearings), and (b) he should either complete a pre-printed form or submit a similar application, since a § 2241 petition *cannot* be a voluminous compilation of stream-of-consciousness-like narratives detailing every incident of Petitioner's two-decades-long incarceration. *See, e.g.* Pet. at 24 (providing such descriptions); *compare* Habeas Rule 4; *George v. Smith,* 507 F.3d 605, 607 (7th Cir.2007) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that a [multi]-claim, [multi]-defendant suit produced but also to ensure that prisoners pay the required filing fees.... A buckshot [pleading] that would be rejected if filed by a free person—say, a suit complaining that A defrauded [him], B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner"). Petitioner is also warned that any future attempt to

---

Docket Entry No. 1–3, at 15. Petitioner, however, dismisses the aforesaid reasons as a basis considered by the Parole Board in its reaching the decision to deny parole, even though he appears to be aware of the statement. *See* Pet. at 23, 30–31 (reading the aforesaid excerpt as an irrelevant and erroneous Parole Board statement that he has been refusing to take responsibility for his offense *at his initial parole hearing, i.e.,* an event that took place a full decade after the murder, and to this day).

**61.** Petitioner's *2241–II* action was filed in 2002, and it appears that *2241–II* addressed Petitioner's 2001 hearing.

**62.** Petitioner does not specify whether the phrase "five parole hearings" refers to the total of five interim hearings or to the total of one initial parole hearing, plus four interim hearings.

**63.** This Court's decision to grant Petitioner leave to "re-amend" his Petition ensues from the Court's concern that Petitioner might otherwise be prevented—by operation of the abuse of writ concept—from challenging this issue in his future petitions. *See Furnari,* 531 F.3d at 250.

relitigate claims under § 2241 that have already been adjudicated in a federal court, including all claims adjudicated herein, in *2241–III*, will result in dismissal of his petition for abuse of the writ. If Petitioner disagrees with any substantive adjudication herein, his sole remedy is to file a timely appeal from a final order and not to once again raise these issues in this action or in some other § 2241 petition.[64]

## IV. CONCLUSION

For the foregoing reasons, Petitioner's instant submission, consisting of the Petition and Supplement, will be dismissed. Specifically,

1. Petitioner's request for detection of such statutes and/or case law that would provide a basis allowing the Petition to proceed past the *sua sponte* dismissal stage will be dismissed, with prejudice, for lack of jurisdiction.

2. Petitioner's request for production of the 1985 Parole Board Manual will be dismissed, with prejudice, for lack of jurisdiction.

3. Petitioner's request for a parole eligibility hearing by this Court will be dismissed, with prejudice, for lack of jurisdiction.

4. Petitioner's request for complete expungement of his BOP record will be dismissed, with prejudice, for lack of jurisdiction or, in the event jurisdiction exists, as a second and successive petition and pursuant to the doctrine of *res judicata*.

5. Petitioner's request for partial expungement of his BOP record will be dismissed, with prejudice, for lack of jurisdiction or, in the event jurisdiction exists, for failure to allege facts suggesting violation of Petitioner's federal rights.

6. Petitioner's speculative allegations that his future parole hearings will violate Petitioner's federal rights will be dismissed for lack of jurisdiction. Such dismissal is without prejudice to Petitioner's bringing appropriate legal actions in the event such future parole hearings take place, and Petitioner, after as-

---

**64.** Local Civil Rule 7.1(g) permits a party to obtain a reconsideration of the court's decision, *see, e.g., NL Indus., Inc. v. Commercial Union Ins.*, 935 F.Supp. 513, 515 (D.N.J. 1996), if the movant meets his burden of demonstrating either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted). Reconsideration is not to be used as a means of expanding the record to include matters not originally before the court. *See Bowers v. NCAA*, 130 F.Supp.2d 610, 613 (D.N.J.2001); *Resorts Int'l. v. Greate Bay Hotel and Casino, Inc.*, 830 F.Supp. 826, 831 & n. 3 (D.N.J.1992); *Egloff v. New Jersey Air National Guard*, 684 F.Supp. 1275, 1279 (D.N.J.1988). *A fortiori*, L. Civ. R. 7.1(g) does not allow parties to restate arguments which the court has already considered. *See G–69 v. Degnan*, 748 F.Supp. 274, 275 (D.N.J.1990). Thus, a difference of opinion with the court's decision should be dealt with through the normal appellate process. *See Bowers*, 130 F.Supp.2d at 612 (citing *Bermingham v. Sony Corp. of America, Inc.*, 820 F.Supp. 834, 859 n. 8 (D.N.J.1992), *aff'd*, 37 F.3d 1485 (3d Cir.1994), and *G–69*, 748 F.Supp. at 275); *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F.Supp. 159, 162 (D.N.J.1988); *see also NL Indus., Inc.*, 935 F.Supp. at 516 ("Reconsideration motions . . . may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment"). In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite [or, here, a fifth bite] at the apple." *Tischio v. Bontex, Inc.*, 16 F.Supp.2d 511, 533 (D.N.J. 1998) (citation omitted).

sessing the events of such future parole hearings in light of the legal regime explained to Petitioner in the instant Opinion, develops a *bona fide* belief that his federal rights were violated by such hearings.

7. Petitioner's allegations that his rights under the Ex Post Facto Clause were violated by his unspecified parole hearings presided by one rather than two examiners will be dismissed, with prejudice, for lack of jurisdiction and failure to assert a violation of Petitioner's federal rights.

8. Petitioner's allegations that his rights were violated by the parole examiner's decision to deny Petitioner's request for presence, during his parole hearings, of audience and for live testimony by the experts and other persons of Petitioner's choice at unspecified parole hearings presided by one rather than two examiners will be dismissed, with prejudice, for lack of jurisdiction and failure to assert a violation of Petitioner's federal rights.

9. Petitioner's allegations that his rights were violated by the parole examiner's bias will be dismissed, with prejudice, for lack of jurisdiction and failure to assert a violation of Petitioner's federal rights.

10. Petitioner's allegations that his rights were violated in light of the holdings of *Mickens–Thomas v. Vaughn,* 355 F.3d 294 (3d Cir. 2004), *Gambino v. Morris,* 134 F.3d 156 (3d Cir.1998), *Wasman v. United States,* 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984), *Pearce v. United States,* 396 U.S. 934, 90 S.Ct. 274, 24 L.Ed.2d 232 (1969), *Bono v. Benov,* 197 F.3d 409 (9th Cir.1999), *Marshall v. Lansing,* 839 F.2d 933 (3d Cir.1988), *Solomon v. Elsea,* 676 F.2d 282 (7th Cir.1982); *Misasi v. United States Parole Com.,* 835 F.2d 754 (10th Cir.1987), *Dye v. United States Parole Com.,* 558 F.2d 1376 (10th Cir.1977), *Billiteri v. United States Board of Parole,* 541 F.2d 938, 944 (2d Cir. 1976), and *Persico v. United States Dept. of Justice,* 426 F.Supp. 1013, 1019 (E.D.Ill.1977), will be dismissed, with prejudice, for failure to meet the requirements of Habeas Rule 2 and failure to assert a violation of Petitioner's federal rights.

Petitioner's motion for appointment of unspecified counsel will be denied, without prejudice, as unwarranted at the instant juncture. Petitioner's OTSC–I and OTSC–II applications for appointment of the attorney of Petitioner's choice will be denied with prejudice.[65]

---

**65.** *See Taylor v. Dickel,* 293 F.3d 427, 431 (8th Cir.2002) (clarifying that the fact that a civil litigant's counsel is appointed does not eliminate judicial limitations on the litigant's choice of counsel and citing *Lee v. Crouse,* 284 F.Supp. 541, 544 (D.Kan.1967), *aff'd,* 396 F.2d 952 (10th Cir.1968), holding that civil litigant who had counsel appointed to him/her "is not entitled to select his counsel"); *see also Fortner v. McNeil,* 2008 WL 2199223, at *2, 2008 U.S. Dist. LEXIS 41507, at *4 (M.D.Fla. May 27, 2008) ("The trial court had no constitutional obligation to appoint stand-by counsel, or counsel of Petitioner's choice"); *cf. Irving v. People,* 2008 WL 618981, at *8–9, 2008 U.S. Dist. LEXIS 16242, at *23 (E.D.Cal. Feb. 29, 2008) ("[even] an indigent criminal defendant, [who] has a Sixth Amendment right to appointment of counsel, [does not have the] 'right [to] be represented by the lawyer he prefers'") (quoting *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), and citing *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45

This Court will allow Petitioner to submit an amended § 2241 petition in the event Petitioner desires to challenge the procedural sufficiency of a notice of action Petitioner received from the Parole Commission.[66] The Court will retain temporary jurisdiction over this matter for the purposes of entertaining such amended petition.

An appropriate order accompanies this Opinion.

### ORDER

For the reasons stated in the Opinion filed herewith,

**IT IS on this 23rd day of July, 2008,** **ORDERED** that Petitioner's § 2241 application for a writ of *habeas corpus,* Docket Entries Nos. 1 and 3, is dismissed. Such dismissal is to the extent detailed in the Opinion filed herewith; and it is further

**ORDERED** that Petitioner's motion for appointment of unspecified counsel, Docket Entry No. 7, is denied without prejudice; and it is further

**ORDERED** that Petitioner's "Order to Show Cause" application, Docket Entry No. 8, and his letter-application, Docket Entry No. 9, both seeking appointment of the attorney of Petitioner's choice, are denied with prejudice; and it is further

**ORDERED** that the Clerk shall serve copies of this Order and Opinion filed herewith upon Petitioner and the United States Attorney for the District of New Jersey by regular U.S. mail and close the file in this matter; and it is further

**ORDERED** that Petitioner may, consistent with the guidance provided to him in the accompanying Opinion, file his amended § 2241 petition in the event he desires to challenge the procedural sufficiency of a notice of action Petitioner received from the Parole Commission, provided that such challenge does not raise an issue already resolved by this Court in the instant opinion or by Judge Rodriguez in *Toolasprashad v. De Rosa* ("*2241–II* "), Civil Action No. 02–2841; and it is further

**ORDERED** that, if Petitioner elects to file such amended petition, he must do so within thirty days from the date of entry of this Order; and it is finally

**ORDERED** that the Court will retain temporary jurisdiction over this matter and, in the event Petitioner files his amended petition within the period of time set forth in this Order, this Court will direct the Clerk to reopen this matter for the purposes of entertaining such amended petition.

---

L.Ed.2d 562 (1975), and *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)).

**66.** The exhibits provided by Petitioner indicate sufficiency of notices provided by the Parole Commission after Petitioner's 2004 and 2006 hearings. All challenges to the parole hearings asserted in Petitioner's *2241–II* action are presumed barred. Hence, Petitioner may, if he so desires, challenge in his amended petition only the procedural sufficiency of one notice of action *not* related to his 2004 or 2006 hearing, or to Petitioner's parole hearing addressed by Judge Rodriguez (presumably, the 2001 parole hearing). If Petitioner desires to challenge the procedural sufficiency of more than one notice of action, he must file a new petition for the other challenge.